OLIPHANT, et al. *v.* THE CARTHAGE BANK.

No. 39792 May 16, 1955 80 So. 2d 63

*Barnett, Jones & Montgomery,* Jackson; *Harold W. Davidson,* Carthage, for appellants.

*Fred B. Smith*, Ripley; *Barnett & Barnett, J. E. Smith,* Carthage, for appellees.

McGEHEE, C. J.

This is an appeal from the Chancery Court of Leake County and is from the action of that court in overruling the motion of the appellants, B. T. Oliphant and others, to docket and dismiss an appeal which had been taken to that court by the appellee, The Carthage Bank, from the action of the State Banking Board in connection with an application of the appellants here for a certificate of authority and necessity issued to them on May 24, 1954, for the incorporation of a new bank at Carthage to be known as The Peoples Bank of Leake County. The appeal here from the chancery court is also from the action of that court in reversing and remanding the cause to the State Banking Board, to be proceeded with in the manner provided by law, after the chancery court had found on the merits of the appeal by The Carthage Bank that the proceedings theretofore taken by the State Banking Board were null and void.

It appears that on November 6, 1953, B. T. Oliphant and several others signed and filed with C. T. Johnson, the State Comptroller of Banks, a petition asking for a certificate of public convenience and necessity to incorporate a new bank in the Town of Carthage in Leake County, pursuant to the provisions of Section 5160, Code of 1942, as amended by Chap. 203, Laws of 1948, and attached to their petition a copy of the proposed charter

of incorporation; that on February 10, 1954, the State Comptroller of Banks called a meeting of the State Banking Board for 10 o'clock A. M. on the 26th day of February 1954, for the purpose of hearing the application. Pursuant to the said statute, as amended by Chap. 203, Laws of 1948, the State Comptroller notified the appellee here, The Carthage Bank, of the said meeting and invited it to be present and with the right to be heard on the question of whether the public convenience and necessity required the establishment of a new bank at Carthage; that on February 26, 1954, the meeting of the Banking Board was held in the Woolfolk State Office Building at Jackson for the purpose of considering the application of the proponents of the new bank, when the proponents of the new bank and the opponents thereof were present, represented by attorneys, and when nine witnesses were introduced by the proponents in support of their application; that the hearing was not completed on that date, and the meeting of the State Banking Board was adjourned subject to call; that on March 12, 1954, another meeting was held in the said Woolfolk State Office Building when the proponents of the new bank introduced additional evidence and The Carthage Bank and other interested persons introduced a number of witnesses to testify against the contention that the public convenience and necessity required the establishment of the proposed new bank; and that Chap. 203, Laws of 1948, and the prior statutes did not make it mandatory that the oral testimony given before the State Banking Board should be taken down and transcribed by a stenographer, and on account of the testimony offered by the proponents having been taken by a court reporter on February 26, 1954, under private employment by The Carthage Bank, the transcribed notes were not made a part of the record on appeal to the chancery court for the reason that the transcript covered the testimony only of the proponents' witnesses heard on that date, and the

testimony taken at the subsequent hearing on March 12, 1954, having been taken by another stenographer on a recording machine which had failed to record the testimony because of mechanical defects, with the result that no complete transcript could be made and embodied in the record on the appeal to the chancery court, and the testimony heard by the Banking Board is therefore not a part of the record now before us.

It appears that the appellee here, The Carthage Bank, was not only notified of the meeting of the Banking Board on February 26, 1954, and permitted to participate in the hearing but it was also invited to be present at the meeting on March 12, 1954, and permitted to introduce considerable testimony at the hearing. However, the State Banking Board, after hearing oral arguments of attorneys representing the proponents of the new bank and by those representing the opponents thereof, held an executive session on April 23, 1954, in the Woolfolk State Office Building, when and where it appears that it took the following action:

"Motion by Mr. McKinney and unanimously adopted in Executive Session April 23, 1954.

"Moved that the present Carthage Bank offer to the Proponents of the new bank 49% of the presently outstanding capital stock of the Carthage Bank at book value as of April 3, 1954.

"If such an agreement is found to be impossible to arrive at, the Banking Board recommends that the applied for charter be granted.

"It is further recommended that final determination be made 30 days from this date.

"April 23, 1954."

Although the statute, Chap. 203 of the Laws of 1948, under which the State Banking Board was undertaking to operate, specifically provided that after the filing of the application for a certificate for authority and necessity to incorporate a new bank, the Comptroller should

make an investigation to determine whether public necessity required the chartering of the proposed new bank, and "record his findings in writing and draw up his recommendations to the Banking Board," and to then call a meeting of the Banking Board to consider the application, the Comptroller did not undertake to do this until April 23, 1954, when he presented to the Banking Board a letter stating, among other things, that, "in an endeavor to correct the present trend in banking service and management at The Carthage Bank, I hereby recommend that this Board give favorable consideration to the pending application." This letter did not contain a finding that in the opinion of the Comptroller, based upon his investigation, the public convenience and necessity required the location of a new bank at Carthage.

Nor did the Banking Board "render a written opinion and decision," either at the conclusion of the hearing on March 12, 1954, or after hearing oral arguments from both of the attorneys representing the proponents of the new bank and those representing the opponents thereof, which were heard on April 23, 1954, before the Banking Board went into the executive session and adopted the motion set forth in paragraph four of this opinion.

The State Banking Board was at that time proceeding under the authority of Chap. 203, Laws of 1948, which amended Sec. 5160, Code of 1942, and the second paragraph of which amending act requires that when the State Comptroller has completed the examination and made his investigation, he shall record his findings in writing and shall draw up his recommendations to the Banking Board, and that thereupon he shall call a meeting of the Board in writing to give consideration to his findings and recommendations, after giving notice of the meeting of the Banking Board to the prospective incorporators of the proposed new bank "and to any and all other interested persons and shall extend to them an in-

vitation to be heard in writing or in person by the Banking Board.'' The third paragraph of the said Act requires that ''The Banking Board, at its meeting, shall consider the findings and recommendations of the State Comptroller and shall hear such oral testimony as he may wish to give, and shall also receive information and hear testimony from the prospective organizers of the proposed bank and from any and all other interested persons, bearing upon the public necessity for the organization and operation of the new bank.''

Paragraph four of the amending act provides, among other things, that ''After considering the record submitted to it by the State Comptroller and his oral testimony and considering such other information and evidence, either written or oral, which has come before it, the Banking Board shall decide if it has before it sufficient information and evidence upon which it can dispose of the application to form the new bank.'' It is further provided therein that ''If it is determined that the evidence and information is not sufficient'' a date for a future meeting shall be set in order that the State Comptroller and the proponents of the new bank, as well as the opponents thereof, may secure additional information and evidence, after due notice of such meeting to the prospective incorporators and other interested persons. It is then provided that the Board *may* order the oral testimony given before it to be taken down and transcribed by a stenographer.

The fifth paragraph of the amending act provides, among other things, that ''If the Banking Board, or a majority thereof, shall determine that it has before it sufficient evidence and information upon which to base a decision, then it shall render a written opinion and decision in the matter.'' Of course this provision means that the Banking Board shall render a written opinion and decision as to whether or not the public convenience

and necessity requires the granting of the application to charter the proposed new bank.

Under neither Chap. 203, Laws of 1948, nor under any prior statute, was an appeal from a decision of the State Banking Board allowable, but an appeal to the chancery court was provided for under House Bill No. 86, Chap. 162, Laws of 1954, approved on May 4, 1954. At that time nothing had been done officially by the State Banking Board except to adopt the motion set forth and quoted in full in paragraph four of this opinion. The adoption of that motion was not a final judgment. It is in the nature of an order or an offer to The Carthage Bank for it to offer the proponents of the new bank 49% of the presently outstanding capital stock of The Carthage Bank at book value as of April 3, 1954. If it is an order, it dealt with a matter over which the State Banking Board had no jurisdiction so as to require The Carthage Bank to offer to the proponents of the new bank 49% of its capital stock at book value or otherwise. If it is deemed to be an offer to The Carthage Bank that in the event it was willing to offer to the proponents of the new bank 49% of the presently outstanding capital stock of The Carthage Bank at book value, then the offer was outstanding when House Bill 86, Chap. 162, Laws of 1954, approved on May 4, 1954, went into effect.

The offer was rejected by the stockholders of The Carthage Bank on May 5, 1954, and the State Banking Board was notified of the rejection of the offer by The Carthage Bank on May 8, 1954. The Carthage Bank had been furnished with the copy of the order or offer made by the State Banking Department on April 23, 1954, in order that The Carthage Bank could either accept or reject the proposition of offering to the proponents of the new bank 49% of the outstanding capital stock of The Carthage Bank at book value, thus showing that the State Banking Board considered that those interested in

The Carthage Bank were interested persons within the meaning of Chap. 203, Laws of 1948. In fact they had attended three hearings on notice to them and upon an invitation for them to be heard, on February 26, 1954, March 12, 1954, and on April 23, 1954 until the Board went into executive session.

The adopted motion which is quoted in paragraph four of this opinion was not a final judgment, but was a conditional order or offer which contemplated that unless The Carthage Bank should offer to the proponents of the new bank 49% of the outstanding capital stock of the former at book value, the Banking Board would authorize the charter to be granted, and that the Banking Board was recommending that ''final determination be made thirty days from this date,'' that is to say April 23, 1954. If the so-called final judgment left open for final determination thirty days later the question of whether or not the charter for the new bank should be granted, and on May 24, 1954, without further action by the State Banking Board the State Comptroller issued to the proponents of the new bank the certificate of authority and necessity for the incorporation thereof, then it was not a final judgment. This date was twenty days after the Act of May 4, 1954, granting the right to the other interested parties to appeal to the chancery court, had been approved.

 █ The Court is of the opinion that the motion adopted on April 23, 1954, was invalid as being a conditional offer or judgment, first, for the reason that the State Banking Department had no jurisdiction to require The Carthage Bank to offer to the proponents of the new bank 49% of the outstanding capital stock of the former, and to fix the price at book value; and, second, because it left the matter open for final determination thirty days later, the State Banking Department being the only legal entity with authority to make the final determination, and was therefore a conditional

order, offer or judgment. It was said in Griffith's
Mississippi Chancery Practice, Secs. 625 and 626 (1st
Ed.), "Nor should a final decree leave open any judi-
cial question to be determined by others, whether those
others be the parties or the officers charged with the
execution of the decree, and even as to matters solely
affecting the execution * * * " which was quoted
with approval in Berryhill v. Berryhill, 198 Miss. 759,
23 So. 2d 889, decided en banc, and citing Todd v. Todd,
197 Miss. 819, 20 So. 2d 827, 831. We are of the opinion
that although the State Banking Board is an adminis-
trative agency, it would be acting in a quasi-judicial ca-
pacity in reaching an opinion and decision on the evi-
dence heard by it in the open hearings held on February
26, March 12 and April 23, 1954, to determine whether
or not a certificate of public convenience and necessity
should be issued, and that therefore the rule announced
in Todd v. Todd, Berryhill v. Berryhill, and Griffith's
Miss. Chancery Practice, supra, with reference to a de-
cree in chancery would be applicable to this conditional
order, offer or judgment rendered by the State Banking
Board on April 23, 1954, following the three hearings
in the matter at issue.

On May 24, 1954, when the State Comptroller issued his
certificate of public convenience and necessity, The Car-
thage Bank and four individuals interested in the said
bank perfected an appeal to the chancery court from
the adopted order, offer or judgment of April 23, 1954,
which brought into review the issuance by the State
Comptroller of the certificate of convenience and neces-
sity of May 24, 1954, and which certificate was issued
twenty days after House Bill 86, Chap. 162, Laws of
1954, had been approved. The chancellor however held
on the motion of the proponents of the new bank to
docket and dismiss this appeal, together with a subse-
quent appeal taken from an "order nunc pro tunc," and
the written opinion and decision of the State Banking

Board rendered on June 4, 1954, that the said order, offer or judgment of April 23, 1954, was not appealable since there was no statute authorizing such appeal in existence on April 23, 1954. But it is unnecessary that we pass upon the correctness or incorrectness of that decision of the chancellor since the motion to docket and dismiss the second of the appeals was overruled and the action of the State Banking Board on June 4, 1954, was heard along with the case on the merits, and the chancellor held on the merits that the action of the Board of April 23, 1954 was a nullity, and that the actions of the Board on June 4, 1954, after the new statute granting the right of appeal had been approved, were void as having been taken without notice to the appellants, The Carthage Bank and the four individuals, as interested persons in the controversy. We confine this decision to the correctness or incorrectness of the holding of the chancellor in overruling the motion to docket and dismiss the second appeal to the chancery court and to his holding that the order, offer or judgment of April 23, 1954, was a nullity, and that the actions of the Board on June 4, 1954, were void as having been taken without notice to the other persons in interest.

The testimony of Mr. O. H. Barnett, local attorney for The Carthage Bank, is undisputed to the effect that he and Mr. Russ M. Johnson, one of the persons interested in The Carthage Bank, went to the office of the State Comptroller in the Woolfolk State Office Building some time prior to June 4, 1954, and requested that they be permitted to see the minutes of the Board as to what action had been taken by it in the proceedings and that they were told by the Comptroller and one of his assistants that no minutes had been written up and that another meeting would be held on June 4, 1954, for the purpose of writing up the minutes; that on June 4, 1954, the witness and one of the interested persons went to the Woolfolk State Office Building to attend the meeting that was to be held by the Banking Board on that

date; that they were unable to find out where the meeting was to be held, and it was not held that day in the Woolfolk State Office Building, where the previous meetings had been held in connection with the matter, but that they learned later during that day that the meeting had been held in a hospital room of the Chairman of the Board in the Mississippi Baptist Hospital, when and where the "order nunc pro tunc" and the written opinion and decision of the State Banking Board had either been agreed upon or entered. We do not think that an order or judgment nunc pro tunc could have been legally rendered even by a court of general jurisdiction without notice to the other parties in interest, and especially where in the main the same was different in material particulars from the order or judgment sought to be corrected, and which contained findings of the Board which were required by the statutes and which did not appear at all in the former order or judgment.

In 49 C. J. S. 246, Sec. 117, as the caption thereof, it is said: "The object and office of a nunc pro tunc entry of a judgment are to exhibit correctly on the record a judgment previously rendered and not carried into the record or not properly and adequately recorded."

And then further it is said as a part of the text of Section 117, that: "In connection with judgments, the object or purpose, and office, function, or province, of a nunc pro tunc entry are to make the record speak the truth by recording or correctly evidencing an act done or judgment rendered by the court at a former time and not carried into the record, or not properly or adequately recorded. It is not the object, office, or province of such an entry to alter a judgment actually rendered, or to correct an erroneous decision or judgment; and, generally speaking, the object or office of the entry is only to support matters of evidence or to correct

clerical misprisions, and not to supply omitted judicial action; * * *."

In the case of Martin v. Newell, 198 Miss. 809, 23 So. 2d 796, this Court specifically held that a board of supervisors, as distinguished from a court of general jurisdiction, could not enter an order nunc pro tunc, the Court saying in its opinion: "It is argued by appellant that the board could enter the original order nunc pro tunc. The pleadings were not so drawn as to make such an issue cognizable on the case here. But we have held expressly to the contrary anyway. Board of Supervisors of Lafayette County v. Parks, 132 Miss. 752, 96 So. 466."

One of the principal arguments made by the appellants here, B. T. Oliphant and others, is that the State Banking Board was acting in its administrative capacity and that it had the right to enter an order nunc pro tunc to cause the former order, offer or judgment of April 23, 1954, to speak the truth by setting forth what the State Banking Board really intended to order when it adopted the motion set forth in paragraph four of this opinion. But it would be difficult for us to find a basis for holding that the State Banking Board did not intend to do what it set forth in its order, offer or judgment of April 23, 1954, as quoted in paragraph four of this opinion, since there was submitted to The Carthage Bank a copy thereof for its acceptance or rejection pending the "final determination" of the matter thirty days after that date, and which offer to The Carthage Bank was still outstanding on May 4, 1954, when House Bill No. 86, Chap. 162, Laws of 1954, was passed and which offer was rejected on May 5, 1954, by The Carthage Bank. It would be more difficult to conceive that on April 23, 1954, the State Banking Board then intended to render the written opinion and decision, which, according to the testimony of Judge M. B. Montgomery, was not prepared until during the first days of May 1954, between May 1st and May the 5th, since that opinion found that

those things had been done and performed which were required for the first time to be done and performed in House Bill No. 86, Chap. 162, Laws of 1954, approved on May 4, 1954. He frankly stated that he prepared the written opinion and decision of the Board sometime within the first five days of May 1954, and this is clearly borne out by the fact that this written opinion and decision contains a recital more than once therein that many of the requirements contained in the first paragraph of Section 1 of the Act of May 4, 1954, had been complied with, and the recitals as to what had been done by the State Comptroller are almost an exact rescript as to what the new Act required, and they did not appear in Chapter 203, Laws of 1948, under which the State Banking Board was proceeding under on April 23, 1954, nor in any previous statute. If the Banking Board had requested and obtained the services of the attorney who prepared the "order nunc pro tunc" and its written opinion and decision, to prepare its minutes on April 23, 1954, there is no doubt that a proper and final judgment would have been rendered, and from which no appeal to the chancery court could have been taken under the then existing law. Most assuredly he would not have advised in the first instance the adoption of the motion quoted in paragraph four of this opinion. We are of the opinion that the chancellor was correct in his view that no legal action had been taken by the State Comptroller or the State Banking Board prior to June 4, 1954, and that therefore the appellee here, The Carthage Bank, was entitled to notice and an opportunity to be heard as an interested party at the meeting on June 4, 1954, since the previous action of the Board was not only a nullity as being beyond the power of the Board to make but was a conditional and not a final judgment.

It appears that the "order nunc pro tunc" of June 4, 1954, prepared in an effort to rectify the error of the adopted motion of April 23, 1954, may be subject to the

same objections in dealing with the question of what The Carthage Bank should do with its capital stock and as not being an unconditional judgment. However, in view of what had transpired on April 23, 1954, it appears that the attorney who prepared the "order nunc pro tunc" did as well as any other lawyer anywhere could have done in the premises at that time. The order reads as follows:

"It appearing unto the Board that heretofore on April 23, 1954, this Board entered upon its minutes the following order:

" 'MOVED, that the present Carthage Bank offer to the proponents of the new bank 49% of the presently outstanding capital stock of The Carthage Bank at book value as of April 3, 1954. If such an agreement is found to be impossible to arrive at, the Banking Board recommends that the applied for charter be granted. It is further recommended that final determination be made 30 days from this date (April 23, 1954) ;'

"And it further appearing unto the Board that said order does not reflect the decision and the judgment of the Board as actually agreed upon, and should be amended; And it further appearing from the personal knowledge and recollection of each of the members of this Board that said order was entered through inadvertence and mistake and does not speak the truth and is not the order that was actually rendered and annunciated by this Board and does not truly express the findings and decisions of this Board and should be corrected so as to speak the truth, it is adjudged and so ordered that said order of April 23, 1954, and hereinabove set out, be and the same is, hereby corrected so as to read as follows:

"Filed 6/9/54

"W. G. Hamil, Clerk

"It appearing unto the Board that this Board and the Comptroller of Banks have each done and performed all of the acts and deeds in the investigation, hearing and determination of this matter at the time and in the manner required by law and have full jurisdiction to do that herein done, this Board does hereby find as a fact that the Carthage Bank, as presently owned and operated, does not adequately supply the banking needs of the people in Carthage, Leake County, Mississippi, and within the trade area of said bank, but that said Bank would adequately supply said banking needs if 49% of the stock of said bank were owned by the proponents of the proposed new bank;

"IT IS THEREFORE ADJUDGED AND SO ORDERED that if the Carthage Bank shall, within thirty (30) days from April 23, 1954, offer to sell and sell to the proponents of the new bank (People's Bank of Leake County) or any of them 49% of the presently outstanding stock of the Carthage Bank at book value as of April 3, 1954, then the application of the proponents of the new bank for a Certificate of Authority to Incorporate is hereby denied without further order of this Board, but if the said Carthage Bank shall not within 30 days from April 23, 1954, offer to sell and sell to the proponents of the new bank (People's Bank of Leake County) or any of them 49% of the presently outstanding stock of the said Carthage Bank at book value as of April 3, 1954, then the application of the proponents of the new bank for a Certificate of Authority to Incorporate is hereby granted without further order of this Board and the State Comptroller of Banks is ordered to give to such prospective incorporators a Certificate under his hand and official seal of the Department of Bank Supervision authorizing the prospective incorporators to proceed to incorporate and organize as is provided in

Section 5157, Title 21, Chapter 2 of the Mississippi Code of 1942 and that this order be entered nunc pro tunc upon the minutes of this Board, and is given effect as of April 23, 1954, in lieu of the order now appearing upon the minutes of this Board under said date of April 23, 1954.

"ADJUDGED AND SO ORDERED, this the ...... day of May, 1954.

> "(Signed) Cecil F. Travis
> **CHAIRMAN, STATE BANKING BOARD**
> "(Signed) W. F. Thompson
> MEMBER, STATE BANKING BOARD
> "(Signed) C. T. Johnson
> STATE COMPTROLLER & EX-OFFICIO
> "(Signed) J. M. Harrison
> MEMBER, STATE BANKING BOARD
> "(Signed) W. T. McKinney
> MEMBER, STATE BANKING BOARD."

But at any rate it is invalid because it was rendered without notice to the other interested parties.

 But it is urged that The Carthage Bank was not entitled to notice of the meeting of June 4, 1954, in order to comply with due process, since the constitutional requirement that no person should be deprived of life, liberty or property is not applicable to corporations except where their property rights are to be affected, and it is contended the said Carthage Bank had no property rights that could be affected by what was to be done on June 4, 1954. The Court is unable to agree with this contention for the reason that The Carthage Bank had the sole right to operate a bank in the Town of Carthage unless and until the requirements of the banking laws were complied with and a valid final judgment was rendered adjudicating that the public convenience and necessity required the establishment of a new bank there, and until the certificate of convenience and necessity had been issued pursuant to a final judgment in that behalf. This right or franchise was a valuable one, entitled

to protection until the wholesome provisions of the banking laws, which had been enacted for the protection of existing banks and for the protection of the public, had been substantially complied with. ▉▉ Nor is the Court able to agree with the contention that the proponents of the new bank had a vested right in the certificate of convenience and necessity issued by the State Comptroller on May 24, 1954, which could not be interfered with by the Legislature in the adoption of House Bill 86, Chap. 162, Laws of 1954, approved on May 4, 1954. If the certificate of convenience and necessity had been issued pursuant to a final judgment, instead of being purported to be issued pursuant to the order, offer or judgment set forth in paragraph four of this opinion, we might then reach the issue of whether or not the proponents of the new bank had a vested right in the certificate, as claimed.

A brief containing eighty typewritten pages has been submitted on behalf of the appellants, and a brief containing one hundred and thirty-one typewritten pages has been submitted on behalf of the appellee, and it would require an opinion of at least one hundred pages in length to discuss and analyze the great number of court decisions and excerpts from the works of textwriters cited in these respective briefs. We deem it unnecessary to thus further prolong this opinion in view of the conclusions that we have reached to the effect, first, that the only judgment attempted to be rendered prior to the passage of the Act of May 4, 1954, was an order, offer or judgment beyond the power of the Banking Board to render; and, second, because the "order nunc pro tunc" and the written opinion and decision of the Banking Board were rendered at a meeting of which the appellee Carthage Bank had no official notice, and had no notice at all as to where the same was to be held, or that the "order nunc pro tunc" and the written opinion and decision were to be rendered at such meeting. The Court is of the opinion that both by Chap. 203,

Laws of 1948, and by House Bill 86, Chap. 162, Laws of 1954, the Legislature was undertaking to further strengthen the provisions of the banking laws in regard to the chartering of new banks, both for the protection of the public welfare, as well as for the protection of persons interested in an existing bank in a particular locality, and that the Legislature intended that these safeguards should be observed and substantially complied with before the issuance of a certificate of public convenience and necessity to the proponents of a new bank would be authorized; that even if we assume that these specific requirements enacted by the Legislature are directory in character, and not mandatory, the proceedings in regard thereto are invalid where there is such a material departure from these wholesome provisions as there was in the instant case.

It is well-settled by the decisions of our Court, and in most every other jurisdiction, that when proceedings are in process under a statute and have not been completed, and have not reached the stage of final judgment, and a new act is passed, modifying the statute under which the proceedings were begun, the new statute becomes integrated into and a part of the old statute as fully as if written therein from the very time the old statute was enacted. This is true as to House Bill 86, Chapter 162, Laws of 1954, modifying Chap. 203, Laws of 1948. Some of our cases so holding on the question are as follows: Deposit Guaranty Bank & Trust Company v. Williams, 193 Miss. 432, 9 So. 2d 638; Stone, Chairman, State Tax Commission v. McKay Plumbing Company, 200 Miss. 792, 26 So. 2d 349; McCullen, Motor Vehicle Comptroller v. Sinclair Refining Company, 207 Miss. 71, 41 So. 2d 382 and Stone, Tax Commissioner v. Independent Linen Service Company, 212 Miss. 580, 55 So. 2d 165.

On the question of whether or not the appellants had a vested right which the Legislature could not interfere

with in the matter of the certificate of authority and necessity issued by the State Comptroller to them on May 24, 1954, the Court is of the opinion that there are two answers to this contention, first, this certificate was supposedly issued under the assumed authority of the order, offer or judgment of April 23, 1954, and was ineffective unless it had been based upon a valid judgment since the case of Stone, Chairman, State Tax Commission v. McKay Plumbing Company, 200 Miss. 792, 30 So. 2d 91, held that the taxpayer had a vested right in the prior judgment for the reason that it was a correct and valid judgment under the law at the time it was rendered and it was held that the amendment of the law pending an appeal from the judgment could not deprive the judgment creditor of his rights under the law at the time he recovered the judgment in the trial court; and, second, the certificate of authority and necessity relied on by the appellants was not issued until twenty days after House Bill 86, Chap. 162, Laws of 1954, approved on May 4, 1954, was passed.

On the question of the necessity for notice to have been given of the June 4, 1954, meeting of the State Banking Board, this Court said in the case of Countiss v. Lee, 159 Miss. 11, 131 So. 643, dealing with the right of a *court* to modify its former judgment that: "After the term of court has expired at which a judgment is rendered, the court is without power to amend that judgment, except upon notice to the parties adversely affected thereby. Section 772, Hemingway's Code 1927, Section 1016, Code 1906, requires that notice shall be served on the opposite party in the effort to amend a judgment. If it be said that this section does not apply, but that the court has inherent power to amend its judgment to conform to the facts, yet it is the general rule that notice shall be given the opposite party of a motion to amend the judgment. See Forbes v. Navra, 63 Miss. 1; Cotten

v. McGehee, 54 Miss. 621; Shirley v. Conway, 44 Miss. 434
34 C. J., page 246, section 472.''

And in 42 Am. Jur. 471-472, Sec. 135, it is said, among
other things, that: ''There is no question that when a
statute requires notice and hearing in reaching an admin-
istrative determination, such statutory requisite must be
met. However, the constitutional guaranty of due proc-
ess of law is applicable to administrative as well as ju-
dicial proceedings, and even in the absence of a statutory
provision therefor, notice and hearing may often be nec-
essary to comply with the constitutional requirement; but
the necessity must depend somewhat on the nature of
the right affected by the administrative action, the na-
ture of the power exercised, the existence of factors other
than the requisite of a hearing which operate to safe-
guard the rights of individuals and to prevent arbitrary
action on the part of officials, and the urgency of public
need requiring prompt action without the delay necessi-
tated by notice and hearing.''

As a final reference to the motion adopted by the Bank-
ing Board on April 23, 1954, and quoted in paragraph
four of this opinion, it should be observed that if the
courts should approve an action of such board in sug-
gesting or requiring that the stockholders of an exist-
ing bank should sell to the proponents of a new bank as
much as 49% of the capital stock of the former as a
condition precedent to the denial by the State Banking
Board of an application to charter a new bank, the
stockholders of the existing bank would necessarily feel
impelled to decline such offer, suggestion or require-
ment since a compliance therewith would place it in the
power of the proponents of a new bank to get control
of the affairs of the existing bank as soon as they could
acquire from one of the stockholders in the existing bank
enough stock, at a price satisfactory to him, to gain such
control. Then, too, the adoption of such a motion as that
of April 23, 1954, would inevitably encourage local citi-

zens who may want some stock in an existing bank to file an application for a certificate of convenience and necessity for the creation of a new bank as a means of acquiring stock in the existing one.

The fact that the existing bank in the instant case had submitted to the Board a proposition of compromise involving an increase of its own capital stock, selling a small part of the stock to the proponents of the new bank, and to elect two of them as directors of the existing bank, and in response to which offer of compromise, it is said that the action of April 23, 1954, was taken, does not change the fact that the offer of compromise made by the existing bank prior to April 23, 1954, is a far cry from that which was offered or suggested by the State Banking Board on that date.

We are therefore of the opinion that the action of the chancery court was correct in overruling the motion of the appellees there, who are the appellants here, to docket and dismiss in any event the second appeal; and that the action of that court was correct in holding that the order, offer or judgment of April 23, 1954, was a nullity, and that the order and decision of the State Banking Board on June 4, 1954, were void for having been rendered without notice to the appellee here, The Carthage Bank, which had been given notice and an opportunity to be heard at three previous meetings, and had participated in the proceedings at all times prior to June 4, 1954. We think that the decree of the chancellor reversing and remanding the cause to the State Banking Department without prejudice to the right of the proponents of the new bank and to the right of the State Comptroller and the State Banking Board to proceed in the manner required by law should be affirmed.

Affirmed.

*Hall, Kyle, Arrington* and *Gillespie, JJ.,* concur.