498 P.2d 488

**In the Matter of the Petition for the Formation of the DOS CABEZAS POWER DISTRICT.**

**Glenn JOHNSON et al., Appellants,**

v.

**ARIZONA PUBLIC SERVICE COMPANY, and Sulphur Springs Valley Electric Cooperative, Inc., Appellees.**

**No. 2 CA–CIV 1077.**

Court of Appeals of Arizona, Division 2.

June 19, 1972.

Rehearing Denied July 20, 1972.

Review Denied Sept. 12, 1972.

Rawlins, Ellis, Burrus & Kiewit, by William D. Baker, and Michael V. Mulchay, Phoenix, for appellants.

Snell & Wilmer, by H. William Fox, Phoenix, for appellee Arizona Public Service.

Gentry, McNulty & Borowiec, by Matthew W. Borowiec, Bisbee, for appellee Sulphur Springs.

HOWARD, Judge.

On April 5, 1971, the Board of Supervisors of Cochise County was formally presented with a petition seeking the formation of a power district within the County of Cochise to be known as The Dos Cabezas Power District. The petition was accompanied by the required cash bond to cover expenses in the organization of the district, and had been noticed for hearing according to law. The board of supervisors, after the hearing, granted the petition, and set the boundaries of the proposed power district. Pursuant to A.R.S. § 30–304, appellees Sulphur Springs Valley Electric Cooperative, Inc. and Arizona Public Service Company filed notices of appeal from the board's decision.

While the appeal was pending, on May 17, 1971, the Governor of the State of Arizona signed Senate Bill 250, now designated Chapter 189, Laws 1971. This measure contained an emergency clause and therefore became law upon the approval of the Governor. The new law amended § 30–315 to provide that the board of supervisors of a county is prohibited from permitting the organization of an electrical or power district if the proposed district includes any territory of another district or any territory served by an electrical cooperative or allocated to a public service corporation by certificate of convenience and necessity issued by the Corporation Commission. Appellees are public service corporations already serving the territory in the proposed district by virtue of a certificate of convenience and necessity.

After oral argument and submission of written briefs, the trial court entered a formal written judgment holding that the amended statute applied to the formation of The Dos Cabezas Power District and enjoining the Board of Supervisors of

Cochise County from proceeding any further in the creation of the district.

In contending that the court erred appellants rely on the following propositions: (1) A.R.S. § 13–315, as amended by Laws 1971, Chapter 189, § 1, does not apply to the formation of The Dos Cabezas Power District. (2) § 30–315, as amended by Laws 1971, Chapter 189, § 1, is unconstitutional.

## THE CONSTITUTIONALITY OF THE AMENDMENT

Prior to the amendment of May 17, 1971, A.R.S. § 30–315 read as follows:

"The board of supervisors of a county in which any portion of the district is located shall not after the order establishing the district is recorded permit the organization of another district which includes any portion of the lands of such district without consent of the board of directors of the district first including the lands."

It would thus appear that under the statute prior to amendment a new district could be formed in a territory already served by a public service corporation. However, under the 1971 amendment such a formation of a new power district is prohibited by § 30–315, subsec. A, which provides:

"A. The board of supervisors of a county in which any portion of a proposed district is located shall not permit the organization of said district if it includes any portion of the lands of another district organized under this chapter, or of a territory served by a public service corporation, electric cooperative, agricultural improvement district or municipal corporation or allocated to a public service corporation, electric cooperative, agricultural improvement district or municipal corporation, either by a certificate of convenience and necessity or a territorial agreement which has been approved by the Arizona corporation commission, if said other district, public service corporation, electric cooperative,

agricultural improvement district or municipal corporation is providing, or capable of providing, power to said lands or territory susceptible of use for cultivation or manufacturing."

Appellants have, on appeal, fired a barrage of constitutional issues. Although they all are without merit, we are obliged to discuss them.

Appellants first argue that the amended statute is unconstitutional because the legislature has authorized the board of supervisors to determine whether a public service corporation or electric cooperative authorized by certificate of convenience and necessity to serve lands or territories included in the proposed power district is "capable of providing" power, without setting forth any standards to be used by the board in making such a determination. We do not deem it necessary to discuss the merits of this argument since it is still the general rule that only those who are injured by the unconstitutional provisions of a statute may raise objections to its unconstitutionality. Town of South Tucson v. Board of Supervisors, 52 Ariz. 575, 84 P. 2d 581 (1938). The amended statute prohibits organization of a proposed power district which includes either (a) lands or territories served by a public service corporation or an electric cooperative or, (b) lands or territories allocated to a public service corporation or electric cooperative by certificate of convenience and necessity if said public service corporation or electric cooperative "is providing, or capable of providing, power to said lands or territory . . .." Appellants' delegation of legislative power argument is directed against the second, but not the first, of the above set forth provisions. It is based on a theory that there is no standard by which the board of supervisors can determine whether or not a public service corporation or electric cooperative is "capable of providing" power. The record clearly shows that the organization of the proposed Dos Cabezas Power District was not prohibited on the basis of any determination of capa-

bility of providing power, but rather on the basis that the proposed district "includes land or territories *served* by a public service corporation and electric cooperative." This was the finding of the trial court and appellants have not challenged that finding and apparently do not claim that the lands and territories included in the proposed Dos Cabezas Power District are not now served by Arizona Public Service with respect to natural gas and by Sulphur Springs Valley Electrical Cooperative with respect to electricity but only *allocated* to them.

It is clear that the legislative delegation of authority to determine whether or not a public service corporation or electric cooperative is capable of providing power has not been applied to appellants' disadvantage. They therefore have no standing to challenge the constitutional sufficiency of that portion of A.R.S. § 30–315, as amended, which allows such a determination to be made by the board of supervisors when a proposed power district includes land or territories *allocated to, but not served by,* a public service corporation or electric cooperative.

Appellants next argue that the amended statute is unconstitutional because it deprives them of vested property rights. They claim that their rights became vested, therefore immunizing them from the effect of the subsequent legislation, when, on May 3, 1971, the board of supervisors made its resolution and order setting the boundaries and calling for an election. We are unable to agree with appellants' contention that they had any vested right. On May 17, 1971, when the amended statute became effective, Dos Cabezas Power District was not yet organized and its future existence was subject to a favorable vote at the election. We initially note that the statute itself does not operate to destroy any alleged "vested right" but it is only in its application to the peculiar facts of this case that one can contend destruction of such rights. We do not in any event believe that there was any vested

right conferred upon appellants by virtue of the procedure they had followed prior to the amendment of the statute. Appellants' claim is based upon their contention that since they have completely complied with the statute as regards the petition for the formation of the power district and since the petition had been approved by the board of supervisors, which had set the boundaries and called for an election, they had an absolute right to have an election and have the board of supervisors declare the district organized if the majority vote cast at the election had voted in favor of the new power district. The rule is that any right conferred by statute may be taken away by statute before it has become vested. 16 C.J.S. Constitutional Law § 223 (1956). Appellants' posing of the question in terms of a "vested right to call an election" is really begging the question. The issue is really whether appellants had an immediate fixed right to in fact be a power district. Our Supreme Court in Steinfeld v. Nielsen, 15 Ariz. 424, 465, 139 P. 879, 896 (1913), adopted the following rule:

> " 'Rights are vested, in contradistinction of being expectant or contingent. They are vested, when the right to enjoinment, present or prospective, has become the property of some particular person or persons as a present interest. They are expectant when they depend upon the continued existence of the present condition of things until the happening of some future event. They are contingent, when they are only to come into existence on an event or condition which may not happen or be performed until some other event may present their vesting.' "

It is clear that the right to be organized as a power district was not vested but was subject to the contingency of a favorable vote at the polls.

Senate Bill 250, in the first regular session of the 30th Legislature, amended not only the Power District Act by amending A.R.S. § ˙30–315, but also the Electrical District Act by adding A.R.S. § 30–528.

The limitations on organization of a power or electrical district, which includes lands or territories served by or allocated to a public service corporation or electric cooperative are identical under Senate Bill 250. However, because amendments to both the Power District Act and the Electrical District Act are contained in Senate Bill 250, appellants argue that it violates the Arizona Constitution and in particular, Article 4, Part 2, § 13, A.R.S., which provides in pertinent part as follows:

"Every Act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title . . .."

We are unable to agree with the appellants that Senate Bill 250 violates the Constitutional provision cited. The title of Senate Bill 250 reads as follows: *"An Act Relating to Power; Providing Limitations on Subsequent Formation of New Power and Electrical Districts. . . ."*

■■ The purpose of the constitutional provision is to prevent the surprise and the evils of omnibus bills and surreptitious and hodgepodge legislation. State v. Espinosa, 101 Ariz. 474, 421 P.2d 322 (1966). Only one subject is embraced in the senate bill, namely, power. The matters connected therewith are expressed in the title, namely limitations on subsequent formation of new power and electrical districts. Those amendments are contained in Title 13 under the Arizona Revised Statutes, and the fact that they are provisions of different chapters does not violate the Arizona Constitution.

■ Appellants further argue that the amended statute grants a monopoly to existing suppliers of power and is therefore unconstitutional. They claim that the amendment violates Article 2, § 9 of the Arizona Constitution which prohibits laws granting irrevocable privileges, franchises or immunities. We find nothing in A.R.S. § 30–315, as amended, which operates to make the rights of the appellees irrevocable. Their rights exist under and by virtue of certificates of convenience and necessity

obtained from the Arizona Corporation Commission in accordance with A.R.S. § 40–281 et seq. Those certificates and the rights conferred thereby are subject to amendment or cancellation by the commission. See A.R.S. § 40–252; Application of Trico Elec. Coop., Inc., 92 Ariz. 373, 377 P.2d 309 (1962). The amended statute does nothing to change that.

■ Appellants also claim that the amendment violates Article 4, Part 2, § 19 of the Arizona Constitution, which prohibits local or special laws of certain classes. We do not agree. A.R.S. § 30–315, as amended, is a general law applicable statewide.

■ Lastly, appellants claim that the amendment violates Article 13, § 6 of the Arizona Constitution which deals with the granting of any franchise by a municipality. The rights of Arizona Public Service and Sulphur Springs are obtained from the State and not from a municipality.

## APPLICABILITY OF THE AMENDED STATUTE

In order to complete the organization of a proposed power district under the Power District Act after the board of supervisors has heard and granted a petition for proposing its organization, the following steps are necessary: (1) The board of supervisors must call an election for the purpose of determining whether the proposed district shall be organized (A.R.S. § 30–306, subsec. A); (2) the board of supervisors must name judges of the election (A.R.S. § 30–306, subsec. C); (3) the board of supervisors must cause a notice to be issued and published giving public notice of the election (A.R.S. § 30–307, subsec. A); (4) the board of supervisors must supply the ballots to be used at the election (A.R.S. § 30–309, subsec. A); (5) the board of supervisors must meet and canvass the votes cast at the election (A.R.S. § 30–311, subsec. A); (6) if a majority of the votes cast favor organization of the proposed district, the board of supervisors shall, by order entered on its minutes, declare the

district organized (A.R.S. § 30–311, subsec. A) ; (7) an order declaring a proposed district organized must be filed for record in the office of the county recorder in each county in which any portion of the land is located (A.R.S. § 30–311, subsec. B) ; and it is only after such recording that the organization of the district shall be complete (A.R.S. § 30–311, subsec. C).

On May 17, 1971, when the amendment to A.R.S. § 30–315 became law, no election had yet been held, no votes had been canvassed and the organization of The Dos Cabezas Power District was not complete.

Appellants argue that once the petition to organize a proposed district was heard and granted, the board of supervisors was powerless to avoid performing the remaining steps necessary to its organization. They argue that whether or not the petition should be granted was discretionary with the board, but all subsequent acts required of the board were ministerial and had to be performed even though the legislature had directed the board not to permit the results which the performance of these acts would produce. This argument is based upon the use of the word "permit" in A.R.S. § 30–315, as amended, as set forth below:

> "The board of supervisors . . . shall not permit the organization of said district . . .."

and upon the subsequent use of the word "shall" when referring to the steps to be taken by the board of supervisors when the petition is approved.

Appellants further contend that in order to be able to "permit" something to occur one must be able to choose between giving or withholding his consent. They say that if a statute requires an act to be performed, it must in all events be performed, and that the result thus obtained is not "permitted" but is rather required. We are unable to agree with appellants' semantic *tour de force*.

The purpose of the amended statute is to prevent the organization of power districts in areas already receiving power without the consent of the existing supplier of such power. The real issue in this case is this: What happens when a statute is amended while proceedings are going on under the old statute? The general rule is that when proceedings are in process under a statute and have not been completed, and a new act passed, modifying the statute under which the proceedings were begun, the new statute becomes integrated into part of the old statute as fully as if written therein from the very time the old statute was enacted. Oliphant v. Carthage Bank, 224 Miss. 386, 80 So.2d 63 (1955). A statute modifying a previous statute has the same effect as though the statute had all the while previously existed in the same language as that contained in the modified statute, unless the modifying statute contains a saving clause. Stone v. Independent Linen Service Co., 212 Miss. 580, 55 So.2d 165 (1951). Every right or remedy created solely by a modified statute disappears or falls with the modified statute unless carried to final judgment before the repeal or modification, save that no such repeal or modification shall be permitted to impair the obligation of a contract or to abrogate a vested right. Deposit Guaranty Bank & Trust Co. v. Williams, 193 Miss. 432, 9 So.2d 638 (1942). As we have previously stated, appellants acquired no vested right to organize the power district. If we were to allow the appellants to complete the organization of their power district, the board of supervisors would be "permitting" the organization of the district in contravention of the amended statute.

Affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.