559 So.2d 1042 (1990)
MAGNOLIA HOSPITAL
v.
MISSISSIPPI STATE DEPARTMENT OF HEALTH and Max Hutchinson, M.D. and Pat Ewing, M.D.
No. 89-CA-106.
Supreme Court of Mississippi.
April 4, 1990.
Barry K. Cockrell, Richard G. Cowart, Paul W. Crutcher, Watkins Ludlam & Stennis, Jackson, Robert G. Krohn, Price Krohn & McLemore, Corinth, for appellant.
Mike C. Moore, Atty. Gen., Arthur C. Sharpe, Jr., Sp. Ass't. Atty. Gen., James T. Cox, Cox Simpson & Bennett, John W. Chapman, Liston & Lancaster, Jackson, for appellee.
Before HAWKINS, P.J., and SULLIVAN and ANDERSON, JJ.
SULLIVAN, Justice, for the Court:
Magnolia Hospital of Corinth, Mississippi, sought a Certificate of Need from the *1043 Mississippi State Department of Health to establish a cardiovascular surgery service at the Magnolia Hospital in Corinth. Max Hutchinson, M.D., and Pat Ewing, M.D., are cardiovascular surgeons who practice in Hospital Service Area One (1). They are staff members of and hold clinical privileges at the North Mississippi Medical Center in Tupelo, Mississippi, and are, within the meaning of § 41-7-173(a), Miss. Code Ann. (Supp. 1989), qualified as "affected persons."
Magnolia Hospital filed an application for a Certificate of Need with the Mississippi State Department of Health for the establishment of an open heart/cardiovascular surgery unit to complement their existing cardio-catheterization laboratory. This application was filed on or about June 1, 1987. In the initial review of the application by the department staff, it was determined that the application did not conform to the minimum population base requirement of the State Health Plan of 1986. But in spite of this, the staff recommended that the State Health Officer approve the application.
On September 30, 1987, a public hearing on the application was held. The State Health Officer, Alton B. Cobb, M.D., M.P.H., expressed concern over three (3) major areas:
(1) whether Magnolia's population base was sufficient to meet State Health Plan requirements;
(2) whether Magnolia would perform a sufficient number of surgeries to sustain a good quality program; and,
(3) whether the proposed Magnolia program would have an adverse effect on the two (2) existing cardiovascular surgery programs located in this service area.
Because of these concerns Dr. Cobb deferred his final decision until additional information could be submitted for consideration. Information was solicited from Magnolia as well as other hospitals in the service area claimed by Magnolia.
On these areas of concern, the administrative record reveals:
(1) Population Base  The Department's staff had determined that Magnolia's population base did not meet the 200,000 to 300,000 required by the 1986 State Health Plan.
(2) Projected Number of Procedures  Magnolia Hospital projected a need for 209 cardiovascular procedures in 1988 and 296 surgeries in 1989. The 1986 State Health Plan required a projected caseload of at least 250 surgical procedures per year. The Southern regional rate of cardiovascular surgical procedures per catheterization was 0.48. Applying this rate to Magnolia Hospital's projected 565 catheterizations in 1988 yields 271 potential surgeries in 1988. During the fiscal year ending September 30, 1987, Dr. Prather of Magnolia Hospital performed 497 catheterizations. Applying the Southern regional rate, this translates into approximately 239 potential surgeries, which is below the required projected caseload.
(3) Impact on Established Programs  Replies concerning this area of concern were received by the Department and provided to Magnolia. During fiscal year 1987, fifty-one (51) cardiac surgery procedures were performed at North Mississippi Medical Center in Tupelo on residents of the service area claimed by Magnolia. Ten (10) such procedures were performed at the Oxford-Lafayette Medical Center on residents of this same area. From September 1, 1986, through August 31, 1987, sixty-four (64) such procedures were performed at the Jackson  Madison County General Hospital in Jackson, Tennessee, on patients from the area in Tennessee claimed by Magnolia as part of its service area.
The second public hearing took place on October 29, 1987, and Dr. Cobb heard arguments from opponents and proponents of the application. Dr. Cobb then denied the application and ruled that Magnolia's primary service area did not meet the minimum population base of approximately 200,000 to 300,000 required by the 1986 State Health Plan for the establishment of a cardiac surgery unit. Dr. Cobb also found that there were two (2) existing cardiac surgery programs in Hospital Service *1044 Area One (1) and that neither of these operations was operating at an optimal level of utilization, and that approval of another program in the area would "... likely reduce the number of cases performed at the existing programs thereby potentially lowering the quality of care for all patients in the service area, and unnecessarily duplicate a very high cost service, and would tend to increase the per case cost to all persons served in the area."
An order denying the Certificate of Need Application was entered. Subsequent to this order, an appeal was made to the Chancery Court of the First Judicial District of Hinds County, Honorable James Arden Barnett presiding. The chancellor upheld the department's decision by an opinion filed on October 13, 1988. Magnolia Hospital appeals to this Court and assigns as error:
1. That the Department of Health's final order was erroneously based on undisclosed information and unpromulgated criteria; and
2. That the chancery court erred in affirming the Department of Health's final order.

DID THE CHANCERY COURT ERR IN AFFIRMING THE DEPARTMENT OF HEALTH'S FINAL ORDER IN THAT THE ORDER WAS BASED UPON UNDISCLOSED INFORMATION AND UNPROMULGATED CRITERIA?
The scope of review of an appeal of a final order of the Mississippi State Department of Health is controlled by § 41-7-201(4), Miss. Code Ann. (Supp. 1988), which provides, in part:
The order shall not be vacated or set aside, either in whole or in part, except for errors of law, unless the court finds that the order of the State Department of Health is not supported by substantial evidence, is contrary to the manifest weight of the evidence, is in excess of the statutory authority or jurisdiction of the State Department of Health, or violates any vested constitutional rights of any party involved in the appeal.
We have previously recognized this standard of review as being "... nothing more than a statutory restatement of familiar limitations upon the scope of judicial review of administrative agency decisions." Grant Center Hosp. of Mississippi, Inc. v. Health Group of Jackson, Mississippi, Inc., 528 So.2d 804, 808 (Miss. 1988).
Further in Melody Manor Convalescent Center v. Mississippi State Dept. of Health, 546 So.2d 972, 974 (Miss. 1989), we said:
The only grounds for overturning administrative agency action by the appellate process is that the state agency has acted capriciously, unreasonably, arbitrarily; has abused its discretion or has violated a vested constitutional right of a party. (Citations omitted.)
Magnolia does not quarrel with the scope of review but says that while an administrative agency may act upon information obtained through its own investigation, the administrative adjudication must be based upon evidence introduced at the hearing and not on the secret knowledge of the agency. Magnolia argues that Dr. Cobb's decision to reject the proposal was based upon Dr. Cobb's personal view that programs such as this should be confined to the larger facilities.
The final order issued by Dr. Cobb, the State Health Officer, said, in part:
I have reviewed your captioned proposal for Certificate of Need (CON) and found it does not conform with the State Department of Health's adopted plans, standards and criteria.
Having considered the facts and circumstances of this application, I have determined that the population base in magnolia Hospital's primary service area does not meet the minimum (200,000) required by the State Health Plan. Furthermore, there are two (2) existing open heart surgery programs within Hospital Service Area I, one being only fifty (50) miles from Magnolia Hospital. Neither of these programs is currently operating at an optimum level of utilization.
*1045 The administrative record shows that Magnolia, North Mississippi Medical Center, Oxford  Lafayette Medical Center, and the Jackson  Madison County General Hospital all responded to Dr. Cobb's request for additional information. The record also shows that Magnolia was provided copies of this additional information.
It is clear from the record that a population base of approximately 200,000 to 300,000 is required before these type services may be approved and the facility proposing the service must prove that it has the referral network to ensure the caseload required. The Department's staff had already concluded that the implementation of open heart surgery facilities at Magnolia would not have an adverse effect on the existing facilities in that region, but the staff had also determined that Magnolia did not meet the required population base minimum of 200,000 as required by the 1986 State Health Plan. This information was available to Dr. Cobb before his request for additional facts. In spite of their determination that Magnolia did not meet the required population base minimum of the 1986 State Health Plan they recommended approval of Magnolia's application.
After a full hearing, Dr. Cobb, contrary to the staff's recommendation, denied the application. We must bear in mind that the ultimate responsibility and decision rested with Dr. Cobb. Section 41-7-193, Miss. Code Ann. (Supp. 1989), states in relevant part:
A certificate of need shall not be granted ... unless the proposal has been reviewed for consistency with the specifications and the criteria established by the State Department of Health and substantially complies with the projection of need as reported in the state health plan in effect at the time the application for the proposal was submitted. If the State Department of Health issues a certificate of need for a proposal which does not substantially comply with the projection of need as reported in the state health plan in effect at the time the application for the proposal was submitted, the State Health Officer shall be personally liable for any additional cost to the State of Mississippi which results from the proposal for which the certificate of need was issued, which may be recovered by suit in the name of the state or in the name of a taxpayer of the state suing for the use of the state. (Emphasis added).
At the October 29, 1987, hearing, opponents of the application argued that Magnolia Hospital failed to meet the minimum population criteria, failed to meet the projected caseload requirement and that opening such a facility would have an adverse impact on the two existing facilities in the area. Proponents of the plan stated that the population base of 200,000 was consistent with the State Health Plan range and consistent with prior approved projects. They also pointed out that 233 surgeries were performed last year out of the service area and that the State Health Plan does not require 250 surgeries but uses this figure as a minimum number for quality.
Dr. Cobb determined, as a matter of fact, that Magnolia Hospital's primary service area does not meet the minimum 200,000 required by the State Health Plan. After carefully reviewing the record, we cannot say that Dr. Cobb's decision turned upon "undisclosed information and unpromulgated criteria," but we affirmatively find that his decision is supported by substantial evidence in the record.
That being true it certainly was not error for the chancery court to affirm the denial of the application.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, ANDERSON and BLASS, JJ., concur.
PRATHER and PITTMAN, JJ., not participating.