# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1998-SA-00968-SCT

*BILOXI HMA, INC. d/b/a BILOXI REGIONAL MEDICAL CENTER*

*v.*

*SINGING RIVER HOSPITAL, OCEAN SPRINGS HOSPITAL AND SINGING RIVER HOSPITAL SYSTEM*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/25/1998 |
| TRIAL JUDGE: | HON. STUART ROBINSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | KATHRYN H. HESTER |
| | THOMAS W. PREWITT |
| | ELLEN MORRIS |
| ATTORNEYS FOR APPELLEES: | WALKER (BILL) JONES, III |
| | BARRY K. COCKRELL |
| | SHERYL BEY |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED - 7/29/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: 08/19/1999 | |

**BEFORE PITTMAN, P.J., McRAE AND SMITH, JJ.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This hospital licensing dispute arises from the 1996 application to the State Department of Health by appellant Biloxi HMA, Inc. d/b/a Biloxi Regional Medical Center (BRMC) for a certificate of need (CON) to construct and operate a new ambulatory surgical facility (ASF) containing 3 operating rooms in Ocean Springs, Mississippi. After giving notice to interested parties, conducting an evidentiary hearing, and pursuant to its Staff recommendation, the Department granted the CON on a modified basis by approving the ASF with 2 instead of 3 operating rooms.

¶2. On appeal, the Chancery Court of the First Judicial District of Hinds County reversed the Department's issuance of the CON and remanded to the Department for further consideration. The Chancery Court concluded that the Department committed legal error in its consideration and application of the utilization of existing facilities criterion contained in the State Health Plan.

¶3. Because the Department's application of the utilization of existing facilities criterion was not erroneous,

we reverse the judgment of the Hinds County Chancery Court and render judgment here reinstating the CON issued to BRMC by the Department.

## STATEMENT OF THE CASE

¶4. In December, 1996, BRMC filed application for a CON with the Department for the establishment of an ASF. Once the application was deemed complete, notice was sent to all interested parties in January, 1997.

¶5. A public hearing was requested. The hearing was held in June, 1997. BRMC, Ocean Springs Hospital, Singing River Hospital, both of which are members of the Singing River Hospital System, and Singing River Hospital System itself (hereinafter jointly "Singing River"), and Biloxi Outpatient Surgery and Endoscopy Center (hereinafter "BOSEC") through representatives and counsel appeared at the hearing, offering testimony and evidence.

¶6. The Department Staff presented its finding that it would approve such a facility if the number of operating rooms was reduced to two. Following the completion of the public hearing, the Hearing Officer recommended approval for the CON. The State Health Officer eventually adopted the recommendation in October, 1997.

¶7. Singing River appealed the decision in November, 1997. Following briefing and argument in the Hinds County Chancery Court, the chancellor reversed the State Health Officer's grant of a CON. The chancellor ruled that the Department had incorrectly interpreted its State Health Plan Criterion 3-Utilization of Existing Facilities. The chancellor ruled that the Department had committed legal error when it arrived at an average utilization per operating room in the ambulatory surgery planning area. The chancellor ruled that the correct procedure would have calculated the actual number of procedures per operating room in each facility and ordered that the proceedings be remanded to the Department to determine if BRMC's application was in compliance with Criterion 3.

¶8. BRMC moved for reconsideration in March, 1998. The Department also filed a motion for clarification of the order along with a motion for relief on the portion of the judgment assessing attorney's fees against the Department.

¶9. Following oral arguments on the motion, the chancellor amended his judgment to eliminate the requirement that the Department and BRMC pay Singing River's attorneys fees. In clarifying his order, the chancellor stated that the Department was required to determine whether each existing facility in the planning area had performed an average of 600 procedures per operating or procedure room. He also allowed the Department the discretion as to whether to count and include both operating rooms and procedure rooms in addressing compliance with the applicable criterion.

¶10. The Department has not filed an appeal of the Chancery Court's amended judgment. BRMC filed a timely appeal to this Court in June, 1998.

## STATEMENT OF FACTS

¶11. BRMC is a short-term, acute care hospital with 153 beds located in the city of Biloxi in Harrison County, Mississippi. In December, 1996, BRMC filed an application for a CON with the Department. In its application, BRMC proposed to construct a freestanding ambulatory surgery center in adjacent Jackson

County, in the city of Ocean Springs. The proposed capital expenditure was estimated to be $2,700,000. Once the application was deemed complete, notice was sent to all interested parties in January, 1997.

¶12. A public hearing was held in June, 1997. BRMC, Singing River, and BOSEC, through representatives and counsel, appeared at the hearing, offering testimony and evidence.

¶13. The Department Staff presented its findings at the hearing. It would approve such a facility if the number of operating rooms was reduced to two. Following the completion of the public hearing, the Hearing Officer recommended approval for the CON with the change from three to two operating rooms. The State Health Officer eventually adopted the recommendation in October, 1997.

## STATEMENT OF THE ISSUES

### I. WHETHER THE CHANCELLOR ERRED BY FINDING THAT THE MISSISSIPPI STATE DEPARTMENT OF HEALTH, ITS HEARING OFFICER AND THE STATE HEALTH OFFICER COMMITTED LEGAL ERROR BY GRANTING A CERTIFICATE OF NEED TO BILOXI REGIONAL MEDICAL CENTER.

## STANDARD OF REVIEW

¶14. A strict standard governs judicial review of agency decisions, including those decisions granting a CON. Miss. Code Ann. § 41-7-201(2)(f) (1993) sets forth the standard:

> . . . The order shall not be vacated or set aside, either in whole or in part, except for errors of law, unless the court finds that the order of the State Department of Health is not supported by substantial evidence, is contrary to the manifest weight of the evidence, is in excess of the statutory authority or jurisdiction of the State Department of Health, or violates any vested constitutional rights of any party involved in the appeal. . . .

¶15. Most recently, this Court has outlined this standard of review:

> This is a proceeding for judicial review of administrative action, and it is important that we understand and accept what this fact implies. The Legislature has directed that a S[tate] H[earing] O[fficer]'s CON order be subject to judicial review, but that it

> . . . shall not be vacated or set aside, either in whole or in part, except for errors of law, unless the Court finds that the order . . . is not supported by substantial evidence, is contrary to the manifest weight of the evidence, is in excess of the statutory authority or jurisdiction of the . . . Department . . ., or violates any vested constitutional rights of any part involved in the appeal. Miss. Code Ann. § 41-7-201(4) (Supp. 1990).

> This is nothing more than a statutory restatement of familiar limitations upon the scope of judicial review of administrative agency decisions. Magnolia Hospital v. Mississippi State Department of Health, 559 So.2d 1042, 1044 (Miss. 1990); See also Mississippi State Dep't of Health v. Mississippi Baptist Med. Ctr., 663 So.2d 563, 573 (Miss. 1995).

> **The decision of the hearing officer and State Health Officer is afforded great deference upon judicial review by this court even though we review the decision of the chancellor, . . . ,**

**de novo**. Mississippi State Dep't of Health v. Southwest Mississippi Reg'l Med. Ctr., 580 So.2d 1238, 1240 (Miss. 1991).

*St. Dominic-Jackson Mem. Hosp. v. Mississippi State Dep't of Health***,** 728 So.2d 81, 83 (Miss. 1998) (emphasis added).

¶16. This Court has held:

> **[O]ur Constitution does not permit the judiciary of this state to retry de novo matters on appeal from administrative agencies.** Our courts are not permitted to make administrative decisions and perform the functions of an administrative agency. Administrative agencies must perform the functions required of them by law. When an administrative agency has performed its function, and has made the determination and entered the order required of it, the parties may then appeal to the judicial tribunal to hear the appeal. **The appeal is a limited one** . . since the courts cannot enter the field of administrative agency. **The court will entertain the appeal to determine whether or not the order of the administrative agency (1) was supported by substantial evidence, (2) was arbitrary and capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party.** quoting State Tax Commission v. Earnest, 627 So.2d 313, 319 (Miss. 1993)

*Cook v. Mardi Gras Casino Corp.*, 697 So.2d 378, 380 (Miss. 1997) (quoting ***Mississippi Dep't of Envt'l Quality v. Weems***, 653 So.2d 266, 273 (Miss. 1995) (emphasis added)).

¶17. An administrative agency's decision, absent an error of law, will only be disturbed if the order of the administrative agency (1) was not supported by substantial evidence, (2) was arbitrary and capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party. *Cook* at 380.

**ANALYSIS**

¶18. After careful review of the parties' briefs, the issues set forth can be summarized by addressing the following:

> **I. WHETHER THE CHANCELLOR ERRED BY FINDING THAT THE MISSISSIPPI STATE DEPARTMENT OF HEALTH, ITS HEARING OFFICER AND THE STATE HEALTH OFFICER COMMITTED LEGAL ERROR BY GRANTING A CERTIFICATE OF NEED TO BILOXI REGIONAL MEDICAL CENTER.**

¶19. The question this Court must address is whether the Department committed legal error when interpreting and applying SHP Criterion 3 of the 1996-1997 State Health Plan.[1] Criterion 3 states:

> 3. An applicant proposing to offer ambulatory surgery services shall document that each existing facility in the ambulatory surgery planning area has been utilized for a minimum of 600 procedures per operating or procedure room per year for the most recent 12-month reporting period as reflected in data supplied to and/or verified by the Mississippi State Department of Health. The Mississippi State Department of Health may collect additional information it deems essential to render a decision regarding any application.

Mississippi State Health Plan at X-10.

¶20. The chancellor ruled in his memorandum opinion and order that the language of Criterion 3 ". . . is clear and unambiguous. It requires that, before another ambulatory surgical facility may be approved, each existing facility in the planning area must have been utilized for a minimum of 600 procedures per operating or procedure room per year for the most recent 12-month reporting period. . . . Since the Department's interpretation of the regulation is contrary to the clear language thereof, the Department has committed legal error, . . ."

¶21. We have stated that ". . . the decision of the hearing officer and State Health Officer is afforded great deference upon judicial review by this Court even though we review the decision of the chancellor." *St. Dominic-Jackson Mem. Hosp.,* 728 So.2d at 83 (quoting *Mississippi State Dep't of Health v. Southwest Miss. Reg'l Med. Ctr.*, 580 So.2d 1238, 1240 (Miss. 1991)). Because the chancellor limited his review of the granting of the CON to the interpretation of Criterion 3, this Court will limit its review to the interpretation of Criterion 3. After careful review, this Court finds that the chancellor erred in ruling that the Department committed legal error in interpreting SHP Criterion 3.

¶22. According to the Department's testimony, the Department divided the number of operating rooms (not including procedure rooms) by the number of surgical procedures, thereby arriving at an average, not actual, utilization of operating rooms in the planning area. Harold Armstrong, Director of the Division of Health Planning and Resource Development for the State Department of Health testified:

> Basically the staff interpretation of that Criterion 3 which speaks to the utilization of existing facilities, staff uses an aggregate of all of the operating rooms, both inpatient and outpatient, in the service area. Also, all of the procedures that are performed. In order to get the average rate per operating room, staff merely takes the total aggregate procedures performed in that service area and divides it by the total number of operating rooms.

By applying this method of calculation, it is clear the BRMC meets the standards set forth in criterion 3: each operating room in the planning area performed an average of 982 procedures per operating room.

¶23. Singing River's argument revolves around the Department's determination that ". . . each existing facility in the ambulatory surgery planning area [had] been utilized for a minimum of 600 procedures per operating or procedure room per year for the most recent 12-month reporting period . . .." Mississippi State Health Plan at X-10. Singing River asserts that the proper interpretation of Criterion 3 requires the Department to determine whether each hospital **individually** met the 600 per operating room or procedure room.

¶24. Singing River's argument was refuted by both Harold Armstrong and Noel Falls, the expert for BRMC. Armstrong explained the procedure for reporting surgeries and operating rooms in each planning area. Each hospital in the planning area is required to submit an annual licensure report that gives the number of procedures performed and the number of operating rooms in that hospital. The State Health Plan then compiles the information in those reports and reports the total number of procedures (not cases) in the planning area and the total number of operating rooms (not procedure rooms) in the planning area.

¶25. After compiling the necessary data, the Department then divides the total number of procedures by the total number of operating rooms in order to determine whether an applicant meets Criterion 3. Because the

hospitals only report the number of operating rooms, only the operating rooms are used in the calculations. Armstrong further testified that the **only** information an applicant could gather from the State Health Plan was the total number of procedures and total number of operating rooms.

¶26. Armstrong then went on to explain the reasoning behind using aggregate, rather than individual, statistics: if there were a hospital in a rural area that was being underutilized, it could conceivably prohibit the development of ambulatory surgical facilities in areas that might need them.

¶27. Noel Falls also refuted Singing River's argument by pointing out that Singing River was also aggregating. He testified that Singing River is including cases, not procedures as required by the criterion. Falls testified concerning the difference between cases and procedures. One case may actually include several procedures: the national average is 1.3 procedures to 1 case. Using cases ( as opposed to procedures as required by Criterion 3) in the calculation actually lowers the number of procedures per operating room.

¶28. It is clear from the testimony of both Armstrong and Falls that there are problems in how information is reported to the Department. The problem, as Falls put it, is one of definition: cases as opposed to procedures. It is because of such ambiguities that this Court gives great deference to the decisions of administrative agencies.

¶29. Administrative agencies are vested with certain decision-making powers. Inherent in these powers is the responsibility to consistently interpret guidelines to avoid arbitrary and capricious results. As noted by BRMC, Harold Armstrong authored the criterion in question. Armstrong's interpretation, which also happens to be the same interpretation as used by the Department, clearly avoids such arbitrary and capricious results.

¶30. As noted above Singing River arrived at its utilization statistics by dividing the total number of operating and procedure rooms by the number of cases, resulting in aggregation. Singing River is using the number of cases reported rather than the number of procedures reported, in clear violation of the criterion. If Singing River wishes this Court to adopt its methodology, it should follow the criterion language itself.

¶31. Five days after the chancellor reversed the CON granted to BRMC, Ocean Springs Hospital, part of the Singing River System, applied for its own CON. In its application, Ocean Springs sought permission to build its own ASF. In its application, Ocean Springs stated:

> Notwithstanding any other statement or document contained in this application, Ocean Springs Hospital, Singing River Hospital and Singing River Hospital System do not relinquish or waive, and hereby expressly reserve, their positions and arguments advanced in the Appeal, including, but not limited to, such positions and arguments as were accepted and adopted by the Chancery Court in the Appeal, as reflected in the Opinion. Ocean Springs Hospital, Singing River Hospital and Singing River Hospital System continue to maintain that CON applications for ambulatory surgical facilities should be reviewed under the standards and requirements set forth in the Opinion. **Nevertheless, in the event that the Department continues to apply the current ambulatory surgery standards consistent with the Department's past practices (and/or if the Opinion is overturned on appeal), then Ocean Springs Hospital requests that this application be reviewed and evaluated by the Department in a manner consistent with its review and evaluation of other applications for the establishment of ambulatory surgical facilities**.

¶32. Ocean Springs (as part of the Singing River Hospital System) vigorously fought BRMC's application for an ASF, claiming that there was no need for the facility. However, immediately after the chancellor overturned BRMC's CON, Ocean Springs immediately filed an application for its own CON.

¶33. This is illogical on the part of Ocean Springs Hospital. According to the methodology it asserted should be used, there was no facility in that Hospital Planning Area that would meet the applicable criteria.

¶34. Ocean Springs further argues that because the State Department of Health sent a notice saying that the application was not in compliance with the applicable criteria and standards, the filing of the application for the CON is irrelevant. This is not the case. The fact remains that Singing River did file an application for a CON after vigorously opposing the grant of a CON to BRMC.

## CONCLUSION

¶35. The Department has clearly established that its method of aggregating is reasonable and logical based on the information reported to the State Health Plan. It is also reasonable and logical in that it prohibits the absurd result of allowing a hospital in a rural area with underutilized facilities to determine whether a hospital in a growing urban area can expand to meet the needs of the community.

¶36. We conclude that the Hearing Officer and State Health Officer did not commit legal error in finding that the average use of operating rooms in the planning area exceeded the minimum threshold requirement of 600 per operating or procedure room. For these reasons, we reverse the amended judgment of the Hinds County Chancery Court, and we render judgment here reinstating the CON issued to BRMC by the Department.

¶37. **REVERSED AND RENDERED.**

**SULLIVAN, P.J., BANKS, McRAE, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR. PRATHER, C.J., NOT PARTICIPATING.**

1. A certificate of need application is reviewed under the State Health Plan in effect at the time the application is submitted. **See *Grant Ctr. Hosp. of Mississippi, Inc. v. Health Group of Jackson, Mississippi, Inc.,*** 528 So.2d 804, 810 (Miss. 1988).