## In re SUPERIOR BOAT WORKS, INC., Debtor.

### Mississippi State Tax Commission, Appellant,

v.

### Superior Boat Works, Inc., Lady Luck Mississippi, Inc., Blue Sea Development Co., Inc. and Andrew Tompkins, Appellees.

Bankruptcy No. 93–22018.
Adversary No. 94–2131.
No. 4:99CV99–D.

United States District Court,
N.D. Mississippi,
Greenville Division.

Decided March 7, 2000.

**260**

John G. Gourlay, Jr., Gerald & Brand, Jackson, MS, Clayton J. Swank, III, Clayton J. Swank, III, Attorney, Madisonville, LA, for Superior Boat Works, Inc., Debtor.

Brenda Greer Cameron, Mississippi State Tax Commission, Jackson, MS, for Mississippi State Tax Commission, appellant.

William M. Beasley, Phelps Dunbar, Tupelo, MS, for Lady Luck Mississippi, Inc., Blue Sea Development, Co., Inc., Andrew Tompkins, appellees.

R. Michael Bolen, U.S. Trustee's Office, Jackson, MS, pro se.

## OPINION

DAVIDSON, District Judge.

This matter comes before the court on appeal from the United States Bankruptcy Court for the Northern District of Mississippi. The Mississippi State Tax Commission (the Commission) appeals the judgment of the bankruptcy court finding that the contractual transaction between the Debtor, Superior Boat Works, Inc., and Lady Luck Mississippi, Inc., Blue Sea Development Co., Inc., and/or Andrew Tompkins, for construction of a floating casino vessel was a non-taxable event. By order of the bankruptcy court, the Commission was required to refund to Superior a tax overpayment of $24,927.57 plus interest and Superior was to pay to the Commission $1,199.70.

### Factual and Procedural History

In February 1993, Lady Luck of Mississippi, Inc., Blue Sea Development, Inc., and/or Andrew H. Tompkins (hereinafter collectively referred to as "the owners"), contracted with Superior Boat Works, Inc. (Superior), a Mississippi corporation engaged in the business of constructing and repairing towboats, barges, and other similar vessels, to repair and convert a damaged tank barge into a replica of an 1860's side wheeler river boat to be utilized as a floating casino. In exchange therefor, the owners agreed to pay Superior $6.4 million.

The damaged barge was initially floated to Superior's dock on Lake Ferguson in Greenville, Mississippi, where Superior erected a three story superstructure on the barge. The vessel, which is not capable of self-propulsion, was subsequently moved to Natchez, Mississippi, by separate tow, where Superior completed the final stages of the project. The barge is currently operated at its mooring in Natchez under the name "Lady Luck."

During the construction of the Lady Luck, Superior held a valid sales and use tax direct pay permit issued by the Mississippi State Tax Commission. A direct pay permit provides that the holder, who statutorily must be a manufacturer, utility, or construction contractor, is directly liable to the State of Mississippi for the payment of sales and use taxes on its purchases, rather than paying the taxes to its vendors at the time of the purchases. As such, Superior did not pay sales taxes to its vendors on the purchases of component materials and services which went directly into the construction of the Lady Luck.

Superior filed for relief under Chapter 11 of the Bankruptcy Code in the Northern District of Mississippi on or about June 30, 1993. The Commission timely filed a proof of claim for taxes due, and Superior filed an objection. By order dated November 22, 1995, the bankruptcy court held that the Commission's claim taxing the transaction between Superior and the owners as a residential construction was contrary to law, but recognized that other taxes might be due on the transaction. With leave of court, the Commission filed an amended proof of claim, asserting that Superior either owed sales tax pursuant to Mississippi Code Annotated § 27–65–17, or a contractor's tax pursuant to Mississippi Code Annotated § 27–65–21. Following a trial of the adversary proceeding, the bankruptcy court determined that section 27–65–21, the contractor's tax, did not apply to the transaction, but that section 27–65–17, the sales tax, did apply. The bankruptcy court, however-

er, further determined that the transaction was exempt from sales tax under section 27–65–101(1)(c) since the transaction was a sale of a vessel or a barge by the builder. It is from that decision that the Commission now appeals.

### Discussion

#### 1) *Standard of Review*

■ This court has appellate jurisdiction over appeals from the bankruptcy court pursuant to 28 U.S.C. § 158(a), which provides in pertinent part:

(a) The district court of the United States shall have jurisdiction to hear appeals from final judgments, orders and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judge under Section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

The court reviews the bankruptcy court's findings of fact under the clearly erroneous standard, while conclusions of law are reviewed de novo. *Smith v. Associates Comm. Corp. (In re Clark Pipe & Supply Co.)*, 893 F.2d 693, 697–98 (5th Cir.1990); FED. R. BANKR.P. 8013.

#### 2) *Statutes at Issue*

This appeal presents the issue of whether the bankruptcy court erred in its determination that the transaction between the parties was not a taxable event. The statutes upon which the bankruptcy court's decision is based provide in pertinent part:

§ 27–65–17. Sale of tangible personal property and private carriers of passengers and property

Upon every person engaging or continuing within this state in the business of selling any tangible personal property whatsoever there is hereby levied, assessed and shall be collected a tax equal to seven percent (7%) of the gross proceeds of the retail sales

of the business, except as otherwise provided herein.

§ 27–65–101(1). Industrial exemptions The tax levied by this chapter shall not apply to the following:

(c) The gross proceeds of sales of dry docks, offshore drilling equipment for use in oil exploitation or production, vessels or barges of fifty (50) tons load displacement and over, when sold by the manufacturer or builder thereof.

§ 27–65–21. Construction activity contracts

(1)(a)(i) Upon every person engaging or continuing in this state in the business of contracting or performing a contract or engaging in any of the activities, or similar activities, listed below for a price, commission, fee or wage, there is hereby levied, assessed and shall be collected a tax equal to three and one-half percent (3–½%) of the total contract price or compensation received from constructing, building, erecting, repairing, grading, excavating, drilling, exploring, testing or adding to any building, highway, street, sidewalk, bridge, culvert, sewer, irrigation or water system, drainage or dredging system, levee or levee system or any part thereof, railway, reservoir, dam, power plant, electrical system, air conditioning system, heating system, transmission line, pipeline, tower, dock, storage tank, wharf, excavation, grading, water well, any other improvement or structure or any part thereof when the compensation received exceeds Ten Thousand Dollars ($10,000). Such activities shall not include constructing, repairing or adding to property which retains its identity as personal property.

*3) Contractor's Tax*

██ First, the court will consider the applicability of the contractor's tax to the transaction between Superior and the owners. Section 27–65–21 applies to transactions involving personal property becoming attached or affixed to real property such that the property loses its identity as personal property. As its name suggests, the contractor's tax is based on the contract between the parties.

The Commission contends that the transaction between Superior and the owners is subject to the contractor's tax because the barge lost its identity as personal property and became an extension of the land upon delivery in Natchez. To this end, the Commission relies on the title of the contract between the parties which reads "Contract for Construction of Permanently Moored Vessel to be Used as Dockside Casino, Restaurant and Entertainment Facility" as proof of the parties' intent to construct a casino that would become permanently affixed to real property. Superior, however, argues that the terms of the contract only required that Superior construct and deliver a floating casino vessel and did not contemplate any construction or annexation to the land.

In making its determination, the bankruptcy court focused not only on the language of the contract between Superior and the owners, but also on the nature of the transaction to ascertain whether the contractor's tax applied. The bankruptcy court found that while Superior was defined as a "Contractor" under the terms of the contract, the contractor's tax was inapplicable because the Lady Luck remained personal property, specifically, a floating gaming vessel, at the time the transaction occurred. The court concluded that Superior delivered a floating vessel as defined by the State Gaming Commission to the owners, in Natchez, Mississippi, and that the vessel had not lost its identity as personal property when delivery occurred, placing the transaction out of the reach of section 27–65–21. The court further determined that if any annexation occurred, such that would make the casino an extension of the real property, it was done by Lady Luck after delivery by Superior.

The record reflects that the contract between Superior and the owners was for construction of a floating vessel that would be permanently moored in Natchez, Mississippi, to be used as a casino, restaurant, and entertainment facility. The contract specifically provides that the "Contractor shall furnish all labor and material and shall perform all work necessary to construct, build, complete and deliver, at the risk of the Contractor, a 300' floating casino vessel." R. at 5. Additionally, the parties agreed that the "Contractor shall have al[l] construction completed before the floating casino vessel leaves Greenville on Friday, February 19, 1993, except for those areas of work that may be performed in Natchez prior [to] the opening of the casino area of the vessel...." R. at 6. As suggested by the Commission however, the title of the contract reveals that the parties intended to permanently moor the vessel to the land. Indeed, testimony elicited during the trial indicated that Superior and/or its agents, Southern Industrial Contractors, under the direction and control of Superior, undertook and completed the mooring process after delivery to the casino site in Natchez.

To find the contractor's tax applicable to the transaction between Superior and the owners, however, the court must find that the Lady Luck did not retain its identity as personal property. While it appears clear that the casino started out as personal property, the vessel was ultimately annexed to the land in Natchez. In considering the nature of the vessel, the bankruptcy court noted that the United States Coast Guard determined that the Lady Luck Casino is a permanently moored vessel, making it substantially a land structure. Moreover, Judge Houston provided that "if I had to make the call to say whether this is an extension of the realty or not, I probably would lean toward the casino being an extension of the real property, as it is presently situated." Transcript of Adversary Proceeding, p. 269. While this court is not compelled by the nature of the Lady Luck as it is pres-

ently situated, and further is in agreement with the bankruptcy court that the vessel, when delivered, had not lost its identity as personal property, it appears clear that the contract as well as Superior's performance encompassed construction of property that would not retain its identity as personal property.

The record indicates that the Lady Luck was secured to the developed casino site by shore wires, deadmen, outboard chains, cables and anchors. The mooring process took place within a week of delivery and was accomplished by Superior's agents and/or employees. During that week, Superior did not relinquish control of the Lady Luck to the owners and ultimately maintained a presence for some three months after delivery.

In light of the above, the court finds that Superior's contractual obligations did not cease upon delivery of the Lady Luck to the casino site in Natchez, but anticipated and included permanently mooring the vessel to the land where the ship was to remain indefinitely. The casino site had been specifically developed for the Lady Luck, Superior and/or its agents conducted the mooring process, and the manner of annexation to the land reflects the intent of the parties to permanently affix the ship to the site. Thus, the contract between Superior and the owners was for construction of a floating casino vessel which did not retain its identity as personal property. This, in the opinion of the court, made the transaction a taxable event pursuant to section 27–65–21.

In addition to the above findings, the court finds persuasive the Mississippi legislature's passage of Mississippi Code Annotated § 27–65–18. While not applicable to the contract between Superior and the owners, the statute, which became effective in 1996, provides for a 3 1/2% tax upon the gross proceeds of sales and construction of floating structures. Thus, future transactions, similar to the underlying contract, would be governed by this provision.

Clearly, section 27–65–18 was not law at the time of the subject transaction, and may not be regarded as an authoritative legislative determination of the meaning of section 27–65–21. *See Grant Center Hosp. of Miss., Inc. v. Health Group of Jackson, Miss., Inc.,* 528 So.2d 804, 809 (Miss.1988). The statute is, however, available as an aid in assigning meaning to the other statute. *Id.* There are no principles of statutory construction which prevent utilization by courts of subsequent enactments as an aid in arriving at the correct meaning of a prior statute. *Id.* Indeed it is very common for a court, in construing a statute, to refer to subsequent legislation as impliedly confirming the view which the court has decided to adopt. *Id.* Section 27–65–18, when compared to section 27–65–21, suggests that the 3 1/2% contractor's tax would apply to construction of the Lady Luck. Indeed, it appears that the Mississippi legislature adopted section 27–65–18 for the specific purpose of addressing the type of transaction before the court.

In accordance with the above principles, the court concludes that the Lady Luck did not retain its identity as personal property, thereby bringing the transaction between Superior and the owners within the reach of section 27–65–21, and that the Mississippi legislature intended for construction of floating casino vessels to be taxed in a similar fashion as other contract construction.

4) *Retail Sales Tax Exemption*

Having determined that the contractor's tax is applicable to the transaction between Superior and the owners, the court will briefly address the applicability of the retail sales tax and the relevant exemption.

Neither the Commission, Superior, nor the owners contest the applicability of sec-

tion 25–67–17. The Commission, however, contends that the bankruptcy court's application of the exemption under 25–67–101(c) was erroneous and submits that Superior sold tangible personal property in an installed condition such that the contract price should have been taxed at 7%. The thrust of the Commission's argument is that Superior never owned the barge upon which the casino was built. Superior and the owners contend that the transaction did fall within the ambit of the exemption. To this end, they argue that ownership of the vessel is not a prerequisite to the exemption.

The bankruptcy court determined that Superior sold and delivered a gaming vessel to the owners, a transaction within the purview of section 25–67–17. The court further determined that the exemption in section 25–67–101(c), for sales by the manufacturer or builder of vessels or barges of fifty tons load displacement and over, applied to the transaction. Ownership of the barge, which as stipulated by the parties, was held by Blue Sea Development, was determined by the court to be incidental to the transaction.

As before, the bankruptcy court relied on both the plain language of the contract and the nature of the transaction in determining the applicability of the tax exemption. The contract required construction of a floating vessel. The derelict barge, upon which the casino was erected, was transformed by Superior into a floating casino vessel. The statutory exemption expressly applies to the proceeds of sales of vessels or barges of fifty (50) tons load displacement and over, when sold by the manufacturer or builder thereof.[1] While neither Superior, nor the owners contend that Superior was the manufacturer of the Lady Luck, the owners argue that Superior classifies as a builder under the exemption.[2]

---

1. The parties do not dispute that the Lady Luck exceeds the 50 ton load displacement requirement.

2. The bankruptcy court previously determined that Superior was a "custom processor" as that term is defined under section 27–65–11(d) and (e), which provides in part:

Upon review of the record, the court concludes that the decision of the bankruptcy court to apply the statutory exemption should not be disturbed. The term "builder" is not defined within the Mississippi Code. In the absence of a statutory definition, terms and phrases must be given their common and ordinary meaning. *Tower Loan of Miss. v. Mississippi State Tax Comm'n,* 662 So.2d 1077, 1083 (Miss.1995). "Builder" is defined as:

> One whose occupation is the building or erecting of structures, the controlling and directing of construction, or the planning, constructing, remodeling and adapting to particular uses buildings and other structures. One who puts, or contracts to put, a structure into permanent form.

BLACK'S LAW DICTIONARY 194 (6th ed.1990).

Nothing before the court suggests that Superior could not be a custom processor as well as a builder and thus qualify for the exemption. Superior built, erected, controlled, and directed the construction of the Lady Luck Casino: a gaming vessel in compliance with the requirements of the Mississippi Gaming Control Laws. As defined, the term builder also contemplates remodeling and adapting buildings and other structures, such as was accomplished in the instant case. That the casino was erected on a pre-existing barge owned by Blue Sea Development does not preclude Superior from qualifying as a builder under the statutory exemption.

Accordingly, the court concludes that the decision of bankruptcy court should be reversed in part and affirmed in part. The court is of the opinion that this case should be remanded to the bankruptcy court for a determination of the amount of tax due. A separate order in accordance with this opinion shall issue this day.

> Custom processor means one who is exclusively or predominately engaged in the business of custom processing or re-manufacturing ... Custom processing means the

*ORDER*

Pursuant to a memorandum opinion issued this day, it is hereby ORDERED that:

1) the judgment and order entered by the bankruptcy court on November 5, 1997, is REVERSED IN PART and AFFIRMED IN PART;

2) this cause is hereby REMANDED to the bankruptcy court for a determination of what amount of tax is due;

3) this case is CLOSED.

performance of a manufacturing service done or made to order upon the property of the customer. . . .