RANDOLPH, Justice,
for the Court.
¶ 1. Following Hurricane Katrina, Patricia Sherman was, inter alia, instructed by her employer to charge and collect room rates greater than room rates charged before the storm. Soon thereafter, she quit her position as a motel desk clerk. Initially, Sherman was awarded unemployment benefits, but later the Board of Review for the Mississippi Department of Employment Security (“MDES”) denied Sherman’s claim. The Circuit Court of Jackson County, Mississippi, affirmed. From that ruling proceeds this appeal.
FACTS AND PROCEDURAL HISTORY
¶ 2. On August 26, 2005, in anticipation of Hurricane Katrina making landfall, Governor Haley Barbour declared a state of emergency. At and before that time, Sherman was employed as a desk clerk at the Days Inn in Moss Point, Mississippi.[1] Prior to Hurricane Katrina, the room rate at the Days Inn was $45-50 per night. According to Mitesh Patel, the Days Inn manager, immediately after Hurricane Katrina hit, “the owners called me and told me to start charging the rack rate.”[2] The “rack rate” was $90 per night. When Sherman voiced her concerns about this practice, Patel “told her we were charging our rack rate.” Patel asserted that the “rack rate” was “set a year in advance” and that “there’s eleven motels on the exit. They’ll all tell you, if they can get the rack rate, that’s what everybody’s going to get is the rack rate.” Thereafter, Sherman voluntarily quit her position because “[tjhere was a lot going on there that I did not agree with.[3] ... [I]n my opinion, I was breaking the law. I was just not treating people right[,]” as the Days Inn was engaging in alleged “price-gouging.” According to Sherman, “I’m the one that’s down there breaking the law. I’m doing it because ... the manager, said do it. But, it’s my name on them folios. Not his.”
¶ 3. On October 16, 2005, Sherman filed a claim for unemployment benefits with the MDES. On December 12, 2005, a claims examiner notified the Days Inn that Sherman was eligible for benefits. Thereafter, the Days Inn appealed the determination of the claims examiner.
¶4. On January 24, 2006, a telephonic hearing was held before an AAO. Following examination of Sherman and Patel, the AAO concluded:
I don’t think that there’s any dispute of record as to whether or not that prices prior to the hurricane are not the same prices that were charged for a room after the hurricane. There’s no dispute about that. Both your testimony and *400 the employer’s testimony both state that that is the case.
(Emphasis added). Nonetheless, the AAO reversed the claims examiner. Following Sherman’s subsequent appeal, the Board of Review “adopted the Findings of Fact and Opinion of the [AAO] and affirmed the decision.” Sherman appealed to the circuit court.[4]
¶ 5. On August 25, 2006, the circuit court entered an “Order Affirming Decision.” Specifically, the circuit court found that the Board of Review’s denial of Sherman’s claim for unemployment benefits “is supported by substantial evidence, is not arbitrary or capricious, comports with established law and that the actions of [Sherman] constituted voluntarily leaving employment without good cause.” Sherman subsequently filed a “Motion to Reconsider and/or Clarify Order” and a “Motion to Expunge Original Order; Motion to Enter Order that Comports with the Facts and Laws of this Cause.” The motions were denied by the circuit court. From that ruling proceeds Sherman’s appeal.
ISSUE
¶ 6. This Court will consider:
(1) Whether Sherman’s refusal to engage in price-gouging following Hurricane Katrina constitutes good cause for voluntarily leaving her employment.
STANDARD OF REVIEW
¶ 7. “In any judicial proceeding under this section, the findings of the Board of Review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.” Miss.Code Ann. § 71-5-531 (reenacted under 2008 Miss. H.B. 1, Section 45). This reflects this Court’s:
obligation of deference to agency interpretation and practice in areas of administration by law committed to their responsibility. This duty of deference derives from our realization that the everyday experience of the administrative agency gives it familiarity with the particularities and nuances of the problems committed to its care which no court can hope to replicate.
Dunn v. Miss. Dep’t of Health, 708 So.2d 67, 72 (Miss.1998) (quoting Gill v. Miss. Dep’t of Wildlife Conservation, 574 So.2d 586, 593 (Miss.1990)). However, “where an administrative agency errs as a matter of law, courts of competent jurisdiction should not hesitate to intervene.” Grant *401 Ctr. Hosp., Inc. v. Health Group of Jackson, Inc., 528 So.2d 804, 808 (Miss.1988) (emphasis added).
ANALYSIS
¶ 8. “The underlying purpose of implementing employment security law in Mississippi is to protect those workers not permitted to continue employment through no fault of their own.” Broome v. Miss. Employment Sec. Comm’n, 921 So.2d 334, 337 (Miss.2006) (quoting Allen v. Miss. Employment Sec. Comm’n, 639 So.2d 904, 906 (Miss.1994)). Accordingly, an individual is disqualified from receiving unemployment benefits if they “left work voluntarily without good cause....” Miss.Code Ann. § 71-5-513(A)(l)(a) (reenacted under 2008 Miss. H.B. 1, Section 39). “The burden of proof of good cause for leaving work shall be on the claimant....” Miss. Code Ann. § 71-5-513(A)(l)(c) (reenacted under 2008 Miss. H.B. 1, Section 39).
¶ 9. At the hearing, the AAO stated, “I don’t think that there’s any dispute of record as to whether or not that prices prior to the hurricane are not the same prices that were charged for a room after the hurricanes. There’s no dispute about that.” (Emphasis added). As such, the AAO correctly recognized the pertinent, undisputed facts. The AAO then determined that Sherman:
initiated her separation when she tendered her resignation. The claimant failed to do all she could do to protect her employment but chose to voluntarily leave this employment. The claimant has not shown good cause within the meaning of the law for voluntarily leaving employment. The claimant has not shown continued employment with this employer would have been detrimental to her health, safety or morals.
In so concluding, the AAO correctly stated that Mississippi Code Annotated Section 71-5-513(A)(l)(a) “provides that an individual shall be disqualified for benefits if he left work voluntarily without good cause.” (Emphasis added). The AAO erred, however, in considering whether “continued employment with this employer would have been detrimental to her health, safety or morals.” Thus, the AAO applied the wrong law. “Health, safety and morals” is a factor to be considered in situations where an individual who is presently receiving unemployment benefits fails to “apply for available suitable work ..., to accept available suitable work when offered him, or to return to his customary self-employment[,]” after being so directed by the employment office or MDES. Miss. Code Ann. § 71-5-513(A)(3)(a) (reenacted under 2008 Miss. H.B. 1, Section 39). Such was simply not the situation in the case sub judice, as Sherman was applying for unemployment benefits.
¶ 10. Mississippi Code Annotated Section 75-24-25(2) provides:
[wjhenever, under the Mississippi Emergency Management Law, Sections 33-15-1 through 33-15-49, a state of emergency or a local emergency is declared to exist in this state, then the value received for all goods and services sold within the designated emergency impact area shall not exceed the prices ordinarily charged for comparable goods or services in the market area at or immediately before the declaration of a state of emergency or local emergency. However, the value received may include: any expenses, the cost of the goods and services which are necessarily incurred in procuring such goods and services during a state of emergency or local emergency. [5]
*402 Miss.Code Ann. § 75-24-25(2) (Rev.2002) (emphasis added). “Any person who knowingly and willfully violates subsection (2)[,]” may be subject to substantial fíne and/or imprisonment. Miss.Code Ann. § 75-24-25(3) & (4) (Rev.2002) (emphasis added). Therefore, the AAO, affirmed by the Board of Review and circuit court, applied the wrong law to undisputed facts. In short, there was no legal basis for the conclusion that Sherman “has not shown good cause ... for voluntarily leaving employment.” We find unemployment benefit claimants satisfy their “burden of proof of good cause for leaving work[,]” Miss. Code Ann. § 71-5-513(A)(l)(c) (reenacted under 2008 Miss. H.B. 1, Section 39), when they voluntarily leave employment rather than violate a statute, which is a question of law. Here, Sherman rejected instructions to commit an act in violation of Mississippi Code Annotated Section 75-24-25(2). Given these facts, and applying the correct law, this Court finds that the AAO, the Board of Review, and the circuit court erred in rejecting the determination of the claims examiner that Sherman was entitled to unemployment benefits. An employee meets the “burden of proof of good cause for leaving work,” Miss.Code Ann. § 71-5-513(A)(1)(c) (reenacted under 2008 Miss. H.B. 1, Section 39), when he or she refuses to engage in conduct that is illegal as a matter of law.[6]
¶ 11. The issue in this case is solved by answering the question of law, and should require no further comment. Notwithstanding the narrowness of the issue before this Court, the separate opinion falls into the wake of the inapplicable, tangential voyage taken by the AAO in its decision, as well as the briefs filed on appeal, by unnecessarily addressing “health, safety and morals.” Miss.Code Ann. § 71-5-513(A)(3)(a). Following this mistaken and illusory path, the separate opinion offers an untenable solution fraught with unintended consequences.
¶ 12. The separate opinion advocates an unnecessarily broad new standard that “as long as an employee has a reasonable, objective belief that she is required to engage in conduct that presents a risk to her health, safety or morals, she has ‘good cause’ voluntarily to leave her employment under Mississippi’s employment security law.” (Emphasis added). The advocacy of this standard is uncalled for as the increased-rate question of law is dispositive, and the errant “health, safety and morals” provision does not apply in this case.
¶ 13. The application of a “belief’ standard of what may be legal or illegal is fraught with error and confusion, and is not necessary for the disposition of this controversy. The error in such a standard is apparent in this case. Specifically, the Days Inn “believed” that it was permissible to raise rates. The agency, however, is controlled by what “is” the law, not what the law is “believed” to be. A “belief’ as to legality cannot be the standard, tossed to the four winds by the wishes and whims of employees or employers alike. Legality rests with the Legislature to create and courts to interpret. For example, is gambling or the consumption of alcoholic beverages illegal? It depends upon the county in which one lives. How could this Court permit recovery of unemployment benefits on the basis of such a transient concept as the employee’s opinion when, as *403 a matter of law, there is no legal basis in fact to support the opinion or “belief?”
¶ 14. Moreover, application of a “belief’ or opinion standard interwoven into matters of morality will create untold numbers of circumstances in which neither the employee or employer will have a definitive standard to rely upon. MDES easily could be presented with a case in the future involving an employee voluntarily leaving employment solely on the basis of “risk ... to his ... morals[J” Miss.Code Ann. § 71-5-513(A)(3)(a). Such vagueness may justify legislative reconsideration in the interest of clarity and fairness to employers and employees, but also clearly warrants avoidance by this Court of interpreting a provision of law not properly before us and creating a “belief’ standard. For instance, can a server who believes that the consumption of alcohol is immoral be entitled to collect benefits after voluntarily quitting a job at a restaurant which did not serve alcohol when the server began employment, but now serves alcohol? Can power plant employees who conjure that a company is “immorally” contributing to global warming be entitled to voluntarily quit their jobs and collect benefits? Or what if thousands of shipyard workers suddenly decide the wars in Iraq and Afghanistan are illegal and immoral? Will the agency be required to assess whether such “beliefs” require the payment of unemployment benefits? Fortunately, this is a voyage we are not required or inclined to take at this time.
CONCLUSION
¶ 15. Based upon the aforementioned analysis, the order of the Circuit Court of Jackson County affirming the decision of the Board of Review is reversed and judgment is rendered granting Sherman unemployment benefits.
¶ 16. REVERSED AND RENDERED.
SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, DICKINSON AND LAMAR, JJ„ CONCUR. DIAZ, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J., AND IN PART BY EASLEY, J.

. Sherman had been in that position since March 2000.

. According to the Administrative Appeals Officer ("AAO”), "[r]ack rates are published maximum rates established annually by hotels and motels.”

. Sherman also alleged that the motel double-rented its rooms, refused to honor Red Cross vouchers, refused to accept credit cards, and rented rooms that were unsuitable for habitation. However, the Days Inn disputed each of these fact issues, and the MDES found for the Days Inn. On such findings, this Court deems deference appropriate. See Miss.Code Ann. § 71-5-531 (reenacted under 2008 Miss. H.B. 1, Section 45) ("[i]n any judicial proceeding under this section, the findings of the Board of Review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law”). Accordingly, we address only the undisputed and case-dispositive question of law presented by the increased rates.

. Attached to Sherman’s notice of appeal was a June 30, 2006, letter opinion from Linda Coston Davis, Special Attorney General— Consumer Protection Division, to Sherman and MDES "regarding Mississippi's [pjrice [glouging [s]tatute at Ms. Sherman's request.” According to Davis’s letter opinion, under Mississippi Code Annotated Section 75-24-25(2):
[o]nce a State of Emergency is declared, then prices shall not exceed the prices ordinarily charged at or immediately before the State of Emergency. It is a common misconception among some innkeepers that they can charge their rack rate during a State of Emergency. This is an incorrect belief. The statute states they must continue to charge the price they ordinarily charged in the days immediately preceding the State of Emergency. The State of Emergency was declared on 26 August 2005. The determining questions are: What price did the motel/hotel charge on 25, 24, 23, 22 August 2005? Did it exceed the price after 26 August 2005? If the answer to the second question is “Yes” then price gouging likely occurred.
There is no indication that this letter was considered by the circuit court, as it was never before the MDES, and this Court will not consider it either. See Skrmetta v. Bayview Yacht Club, Inc., 806 So.2d 1120, 1127 (Miss.2002).

. The record is void of any claim by Days Inn that they incurred additional operating ex *402 penses.

. The separate opinion errs in referring to this as a "new standard!.]” The statutorily-enacted standard is that of “good cause.” See Miss.Code Ann. § 71-5-513(A)(1). This Court merely applies the correct law to the present set of facts in reaching the above-referenced conclusion.