WALLER, CHIEF JUSTICE,
 

 for the Court.
 

 ¶ 1. Appellant BellSouth Telecommunications, Inc., d/b/a AT & T Mississippi (“AT & T”) appeals a decision of the Mississippi Public Service Commission (“PSC”) to deny a requested rate increase for certain telephone services. AT & T asserts four separate arguments on appeal
 
 [1]
 
 : (1) whether the Public Service Commission erred in holding it retained regulatory authority over switched access and single-line flat rate voice communication services; (2) whether the Public Service Commission improperly utilized the “rate of return” methodology to determine the requested rate increase was not just and reasonable; (3) whether the Public Service Commission exceeded its regulatory authority by regulating “retail rates” and (4) whether the Public Service Commission decision was arbitrary and capricious.
 

 ¶ 2. Finding no error on the part of the PSC, we affirm.
 

 FACTS AND PROCEEDINGS
 

 ¶ 3. In this appeal of a PSC decision, AT & T alleges the PSC decision to deny a requested rate increase for certain types of telephone lines was arbitrary and capricious. AT
 
 &
 
 T submitted a Notice of Filing on May 13, 2008, to the PSC, proposing a rate increase for single-line flat rate business and residential service lines. The specified reason for the increase was the old rates were not competitive with prevailing market rates; the increase
 
 *201
 
 would bring the rates for these specified types of service in line with the current market rates.
 

 ¶ 4. In 2006, the Legislature amended Mississippi Code Section 77-3-35(4)(a) to essentially deregulate telecommunications for all but two specified types of telephone service, switched access service and single-line flat rate voice communication service. For these two types of service, the statute further provided a cap on the maximum amount a telecommunications provider could increase rates in any one year, the cap being the increase in the Consumer Price Index for all Urban Consumers.
 

 ¶ 5. AT & T proceeded before the PSC on the basis that this amended statute only permitted the PSC to determine whether or not the proposed rate increase complied with the statute, i.e., was it within the range of the increase in the Consumer Price Index? The PSC interpreted the statute to mean that it retained full regulatory oversight for switched access and single-line flat rate services/products and, therefore, for these services and/or products, its mandate remained the same, to determine whether the requested rate increase was just and reasonable.
 

 ¶ 6. Pursuant to this mandate, the PSC suspended the filing for further investigation via data requests and a hearing before the full Commission. In keeping with PSC procedures, AT & T pre-filed testimony with the Commission and provided live witness testimony at the hearing. After the hearing, the PSC entered an order denying the rate increase on the ground that AT & T had failed to provide evidence the rate increase was just and reasonable.
 

 ¶ 7. AT & T subsequently perfected appeal to this Court pursuant to Mississippi Rule of Appellate Procedure 19.
 

 STANDARD OF REVIEW
 

 ¶ 8. The applicable standard of review is whether the order of the administrative agency 1) was unsupported by substantial evidence, 2) was arbitrary or capricious, 3) was beyond the power of the administrative agency to make, or 4) violated some statutory or constitutional right of the complaining party.
 
 Town of Enterprise v. Mississippi Pub. Serv. Comm’n,
 
 782 So.2d 733, 735 (Miss.2001).
 

 DISCUSSION
 

 1. Whether the Public Service Commission erred in holding it retained regulatory authority over switched access and single-line flat rate voice communication services.
 

 ¶ 9. AT & T first argues the PSC lacked authority to deny its requested rate change because of amendments to Mississippi Code Section 77-3-35. The authority the PSC previously had to determine whether or not a requested rate increase was just and reasonable was removed by the amendments, according to AT & T.
 

 ¶ 10. The authority of the PSC to regulate the rates charged by telecommunications providers springs from Mississippi Code Section 77-3-33:
 

 (1) No rate made, deposit or service charge demanded or received by any public utility shall exceed that which is just and reasonable. Such public utility, the rates of which are subject to regulation under the provisions of this article, may demand, collect and receive fair, just and reasonable rates for the services rendered or to be rendered by it to any person. Rates prescribed by the commission shall be such as to yield a fair rate of return to the utility furnishing service, upon the reasonable value of
 
 *202
 
 the property of the utility used or useful in furnishing service.
 

 Miss.Code Ann. § 77-3-33 (Rev.2000).
 

 ¶ 11. The full text of the disputed portion of statute, Mississippi Code Section 77-3-35, as amended in 2006, which provides for regulation of switched access service and single-line flat rate voice communication service, reads:
 

 (4)(a) Notwithstanding any other provisions of this article or any other statute to the contrary, and consistent with the provisions herein, for those public utilities of the type defined in Section 77-3-3(d)(iii) that are subject to the competitive requirements set forth in 47 USCS Section 251 or those public utilities that have waived a suspension granted by the commission of the requirements of 47 USCS Section 251(b) and (c) as authorized by 47 USCS Section 251(f)(2), the Legislature has determined that, in the provision of all services other than switched access service and single-line flat rate voice communication service, competition or other market forces adequately protect the public interest.
 
 Therefore, the commission is only authorized to regulate the rates, terms and conditions of switched access service and single-line flat rate voice communication service within a traditional local calling area, with access to 911, with touch tone dialing and with access to long distance, so long as such single-line flat rate service is not combined with any other service, feature or product. The retail rates for such single-line flat rate voice communication service beginning January 1, 2007, and every succeeding January 1 may only be increased during the calendar year by an amount that does not exceed the rates for such service on January 1 of the previous year, plus the increase in the Consumer Price Index for all Urban Consumers as reported by the United States Department of Labor, Bureau of Labor Statistics.
 

 Miss.Code Ann. § 77-3-35 (Supp.2008)(emphasis added.)
 

 ¶ 12. AT & T’s first argument requires this Court to determine the meaning of this particular amended statute and its impact upon the PSC’s regulatory functions and authority. AT & T argues the amended statute limits the PSC to the ministerial act of determining whether or not a requested rate increase complies with the statutory cap. If so, AT & T argues, the PSC lacks the discretion to deny the increase. The PSC disagrees, stating it has retained all its prior authority to regulate the statutorily designated types of telecommunication services.
 

 ¶ 13. An agency’s interpretation of its enabling statutes is to be accorded deference, so long as that interpretation is not contrary to the plain statutory language.
 
 Gill v. Mississippi Dep’t of Wildlife Conservation,
 
 574 So.2d 586, 593 (Miss.1990).
 
 See also Sherman v. Mississippi Employment Sec. Comm’n,
 
 989 So.2d 398, 400 (Miss.2008).
 

 ¶ 14. A reading of the statute shows it is unambiguous in both its wording and effect, particularly when read
 
 in pari materia
 
 with other relevant statutes. Section 77-3-33 specifically grants the PSC authority to regulate telecommunications rates, including fulfilling the obligation of determining whether proposed rate increases are fair and just. The amended Section 77-3-35 merely limits that duty to two particular types of service, the legislature having decided all other types of service have sufficient market and/or competitive forces at work to safeguard the public interest.
 

 ¶ 15. By its very terms, the statute’s revocation of regulatory authority does
 
 *203
 
 not apply to switched access service and single-line flat rate voice communication service. To the contrary, the statute specifically reserves to the PSC regulatory authority over those two types of service. Nothing in the statute, either implicitly or explicitly, limits the PSC’s regulatory function to mere ministerial approval or disapproval after “doing the math,” and the PSC’s interpretation is reasonable and appropriate.
 

 ¶ 16. The cap on the limit of annual increases reads as exactly that: a cap on the amount retail rates for the two particular services may be increased in a given year. AT & T argues the reservation of regulatory authority sentence in the statute (“therefore, the commission is only authorized to regulate ... ”) is a general statement followed by a specific sentence (“the retail rates for such single-line flat rate voice communication ... ”) such that the specific sentence takes priority and is controlling. AT & T cites
 
 McCrory v. State,
 
 210 So.2d 877 (Miss.1968) for this proposition. However, this rule of construction only applies when there is a conflict or overlap between different code sections.
 
 See Harrison v. State,
 
 800 So.2d 1134, 1137 (Miss.2001) (“This Court has also recognized that in resolving the conflict of specific versus general statutory provisions: To the extent that two constitutional or statutory provisions overlap or conflict, specific provisions control over general provisions.”) (internal quotation marks omitted).
 
 [2]
 

 ¶ 17. The sentences are neither overlapping nor conflicting. The former reserves authority for regulation, the latter provides a rule of law for use in conjunction with that regulation. When the language used by the Legislature is plain and unambiguous and the statute conveys a clear and definite meaning, as here, the Court will have no occasion to resort to the rules of statutory interpretation.
 
 Marx v. Broom,
 
 632 So.2d 1315, 1318 (Miss.1994).
 

 ¶ 18. Whether one chooses to view this provision as a cap on the amount a telecommunications provider may request or a cap on the amount the PSC may approve, nothing in the language appears to eliminate the regulatory requirement that the amount, whether it is at or below the maximum permitted, still be just and reasonable. The PSC retains authority to make the just and reasonable determination for requested rate increases for the designated services.
 

 2. Whether the PSC improperly utilized the “rate of return” methodology to conclude the rate increase sought by AT & T was not just and reasonable.
 

 ¶ 19. Although not specifically designated as a separate issue, AT & T argues the PSC improperly relied upon use of the long abandoned “rate of return” methodology to find its rate increase request was not just and reasonable, as well as outside the scope of its ministerial review. The PSC argues its use of the words “rate of return” in its order is taken out of context and that it did not rely upon any “rate of return” in making its decision.
 

 ¶ 20. The burden of proof to establish with a preponderance of the evidence that a requested rate increase is just and reasonable rests upon the utility.
 
 Pittman v. Mississippi Pub. Serv. Comm’n,
 
 538 So.2d 387, 394 (Miss.1989).
 
 See also Mississippi Pub. Serv. Comm’n v.
 
 
 *204
 

 Mississippi Power Co.,
 
 429 So.2d 883, 887 (Miss.1983).
 

 ¶21. The referenced portion of the PSC order reads:
 

 AT & T Mississippi seeks to increase the rate in 1FR Rate Groups 1-9 in order to get the rates closer to the market rate of $19.01. However, AT & T Mississippi has provided no cost of service study, cost justification data or any other type of study or data to indicate that the 1FR market rate for Rate Groups 1-9 is $19.01 and that those rates in Rate Groups 1-9 should be increased in order to be moved closer to $19.01.
 

 ¶ 22. This language is used again in referring to the second type of service for which AT & T sought a rate increase:
 

 Likewise AT & T has also not met its burden regarding the proposed increase to 1FB rates. AT & T Mississippi sought and received approval from this Commission to reduce these rates in 2000. AT & T Mississippi now claims that these rates are no longer at the proper market rate. However, AT & T Mississippi has pi’ovided no cost of service study, cost justification data or any other type of study or data to indicate the current 1FB market rate for Rate Groups 1-13 and that those rates in Rate Groups should be increased in order to be moved closer to the market rate.
 

 ¶ 23. A plain reading of the order shows the PSC’s argument regarding context has merit. When read in context, it is apparent the PSC did not base its conclusion upon the lack of a cost of service study (and thus the “rate of return” methodology) but merely listed several types of possible evidence AT & T
 
 could
 
 have submitted to support its rate increase request and therefore meet its burden of proof. “Cost of service study” is but one of several things AT & T could have submitted but did not and its inclusion in the string of possible supportive data was merely illustrative of AT & T’s failure to meet its burden of proof.
 

 ¶ 24. AT & T’s argument the PSC improperly utilized a “rate of return” methodology to determine its requested rate increase was not just and reasonable is without support in the record.
 

 3. Whether the PSC exceeded its regulatory authority by regulating “retail rates.”
 

 ¶25. AT & T argues in its brief that it was seeking to increase its “retail rates” which are separate and distinct from “rates.” AT & T concedes the PSC has the authority to regulate “rates.” The PSC responds there is no difference between “retail rates” and “rates.” AT & T appears to be arguing that “retail rates” are a subset of “rates” already approved by the PSC as set out in the company’s filed tariff, “not a rate request for a new service offering” requiring approval.
 

 ¶ 26. The applicable statute defines “rate” as:
 

 (e) The term “rate” means and includes every compensation, charge, fare, toll, rental and classification, or the formula or method by which such may be determined, or any of them, demanded, observed, charged or collected by any public utility for any service, product or commodity described in this section, offered by it to the public, and any rules, regulations, practices or contracts relating to any such compensation, charge, fare, toll, rental or classification; however, the term “rate” shall not include charges for electrical current furnished,
 
 *205
 
 delivered or sold by one public utility to another for resale.
 

 Miss.Code Ann. § 77-3-3(e)(Rev.2000).
 

 ¶ 27. The statute does not distinguish between “retail rates” and other “rates.” It specifically includes “every compensation, charge, fare, toll, rental and classification ...” If, as AT & T suggests, a “retail rate” is somehow different from a tariff “rate,” it is a distinction without a difference, since the encompassing language of the statute includes all forms of rates within its definition.
 

 ¶ 28. Further, AT
 
 &
 
 T’s argument is logically untenable. Whether or not the terms of Mississippi Code Section 77-3-35(4) apply to “a rate request for a new service offering,” is not before us as AT & T did not seek to establish a rate for a new service offering, but to increase the rate charged for an existing service offering. AT & T appears to be suggesting that a rate increase request is somehow equivalent to a new service offering. Even if logic did not dictate against such a position, AT & T has not cited any authority for this apparent argument and it need not be addressed.
 
 Graves v. Dudley Maples, L.P.,
 
 950 So.2d 1017, 1021 (Miss.2007).
 

 4. Whether the PSC decision was arbitrary and capricious
 

 ¶ 29. AT & T bore the burden of proof to show its requested rate increase was just and reasonable.
 
 See Mississippi Pub. Serv. Comm’n v. South Cent. Bell Tel. Co.,
 
 464 So.2d 1133, 1134 (Miss.1984). The PSC asserted in its order and in its brief to this Court that AT & T adduced no evidence at all to establish the just and reasonable nature of its requested rate increase. AT & T does not dispute this, but relies instead upon the argument it was not required to put on any such evidence given the amendment to Mississippi Code Section 77-3-35(4)(a).
 

 ¶ 30. Since all parties agree AT & T submitted no evidence to support its requested rate filing, AT & T did not carry its evidentiary burden. The absence of evidence was the basis of the PSC order’s finding the proposed rate increase was not just and reasonable. There does not appear to be a legitimate basis for finding the PSC was arbitrary or capricious in reaching its conclusion.
 

 CONCLUSION
 

 ¶ 31. The PSC’s interpretation of Code Section 77-3-35(4) is consistent with the plain language of the statute and the PSC retains full regulatory authority over switched access service and single-line flat rate voice communication service. There is no evidence the PSC employed an improper methodology in making its decision, nor is there a distinction between “retail rates” and “rates” for purposes of regulatory authority. The PSC decision denying the request rate increase was not arbitrary or capricious and it is affirmed.
 

 ¶ 32. AFFIRMED.
 

 CARLSON AND GRAVES, P.JJ., DICKINSON, RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.
 

 [1]
 

 . AT & T only listed one assignment of error in its brief, while making four separate arguments within the body of the argument. The arguments have been separately discussed as each plays a part in the resolution of this case.
 

 [2]
 

 . AT & T's argument centers upon two sentences of a single statute, rather than two different statutes.